## Staunton.

PILLOW AND OTHERS v. SOUTHWEST VIRGINIA IMPROVEMENT
COMPANY AND OTHERS.

SEPTEMBER 26, 1895.

1. EVIDENCE—*Competency of Witness—When Objection to be Made.*—Objection to the competency of a witness, known to be incompetent, should be made before he is examined in chief. It cannot be made after cross-examination.

2. SUIT FOR PARTITION—*Parties—Ejectment—Sec. 2562 of Code.*—While a suit for partition cannot be made a substitute for an action of ejectment, yet if the defendant in such suit claims under one who was a joint owner with the complainant, or those under whom he claims, the suit may be maintained, and all questions of law arising in the case may be settled by the court, under sec. 2562 of the Code.

3. CONSTITUTIONAL LAW—*Jury Trial—Sec. 2562 of Code Constitutional.*—A constitutional provision which guarantees the right of a trial by jury must be read in the light of the circumstances under which it is adopted. If the right did not then exist, the Constitution does not confer it, unless it be expressly so provided, or necessarily implied. Tested by this rule, sec. 2562 of the Code is not in conflict with Art. I., clause 13, of the Constitution of this State.

4. COPARCENERS—*Possession of One—Adverse Possession—Disclaimer—Lapse of Time.*—As between coparceners and others claiming in privity, the entry into possession of one is always presumed to be in maintenance of the right of all; and this presumption will prevail in favor of all until some notorious act of ouster or adversary possession is brought home to the knowledge of the others, or it is clearly shown that he has become the owner by purchase. A clear, positive and continued disclaimer of title, and the assertion of an adverse right brought home to the knowledge of the other coparceners, are indispensable, though great lapse of time, with other circumstances, may warrant the presumption of a disseisin or ouster by one coparcener, or other joint owner.

Statement.

5. PURCHASER OF REAL ESTATE—*Notice of Vendor's Title of Record.*—A purchaser of real estate has constructive notice of the recorded title papers of his vendor, and it is the duty of such purchaser to examine the proper records to ascertain whether his vendor, or those under whom he claims, have made any prior conveyances of said real estate, or whether the same is encumbered.

6. COPARCENERS—*Trust Relation—Defective Title of Ancestor—Title Acquired by One Coparcener.*—The relation of trust and confidence which coparceners sustain to each other is the same whether the title of the ancestor to the property in question be good or bad. And where the title of the ancestor is defective, and one coparcener subsequently acquires the legal title, he holds the same in trust for the benefit of all the coparceners, if they choose, within a reasonable time, to claim the benefit of the acquisition by paying, or offering to pay, their proportion of the price paid.

7. SUITS FOR PARTITION—*Jurisdiction of Parties—Land Out of the State.*—The courts of this State have no jurisdiction to decree a partition of lands lying in another State, and, although a court of equity, with all necessary parties before it, may, in a proper case, compel the parties to make such conveyances of land beyond the State as may be necessary to do justice between them, yet the evidence in the case at bar fails to disclose fraud, or such relations of trust or contract between the parties as would warrant the court in making such a decree.

Appeal from a decree of the Circuit Court of Tazewell county, pronounced September 1, 1893, in two suits in chancery heard together, wherein appellants were complainants, and the appellees were the defendants.

> *Case No.* 1 *Reversed.*
> *Case No.* 2 *Affirmed.*

The second-mentioned suit was a suit in chancery instituted in the Circuit Court of Tazewell county by some of the heirs of Thomas Turner, deceased, against the Southwest Virginia Improvement Company and others, for the partition of a tract of one hundred acres of land, whereof it was alleged that said Thomas Turner died seised and possessed. Defence was made on the ground that said Thomas Turner had in his

lifetime sold the land to one Emanuel Church, who had paid part of the purchase money, and had assumed the payment of the residue—which had been subsequently paid—and that Turner had given him a title bond for the land. It was shown in evidence that the bond had been given by Turner, but had been lost. Four witnesses were examined concerning this title bond. Three of them had been successive owners of the land under said Turner. No exception was taken to the competency of any of these witnesses, either when their depositions were taken, or at the hearing. The Circuit Court dismissed the bill at the hearing.

The first-mentioned suit was instituted by the same complainants, in the same court, against the Southwest Virginia Improvement Company and others, for the purpose of having partition of a tract of land lying partly in the State of Virginia and partly in the State of West Virginia.

The opinion states the case.

*Harman, Blair & Blair, S. B. Coulling,* and *J. H. Fulton,* for the appellants.

*J. S. Clark* and *A. J. & S. D. May,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The record in the second-named case shows that Thomas Turner, deceased, whose heirs brought the suit for partition, had some years before his death sold the land to Emanuel Church, and executed a title bond to him therefor; that the purchase money had been fully paid; and that his heirs held merely the legal title, without any beneficial interest in the land. The title bond was not produced, but the evidence shows that search for it was made among the papers of the

Flat-Top Land and Coal Association, in whose possession it ought to have been, and it could not be found. The proof of its existence, however, is clear and satisfactory, if the depositions of the witnesses who testify upon that point can be read.

The objection is made that neither Church, to whom the title bond was executed, nor any other claimant of the land under the title bond, by assignment or transfer, are competent witnesses, upon the ground that Thomas Turner, who executed the title bond, is dead, and that they are parties to the contract or transaction which is the subject-matter of investigation. Whether they are parties to the contract or transaction, within the meaning of the statute (Code, sec. 3346), it is unnecessary to decide, as no objection to their competency on that ground was made when their depositions were taken. Objection to the competency of a witness ought to be made, where his incompetency is known, before he is examined in chief; at least, it cannot be made after cross-examination. The complainants in this case objected to certain questions and answers of the witnesses upon other grounds, and then cross-examined them. It was too late afterwards to make the objection relied on. *Hord's Adm'r* v. *Colbert*, 28 Gratt. 49, 55 ; *Smith's Ex'x* v. *Profitt's Adm'r*, 82 Va. 832 ; 1 Greenl. Ev., sec. 421. The complainants in this case, having no beneficial interest in the 100 acres of land which they sought to have partitioned, the Circuit Court properly dismissed their bill, and its action must be affirmed.

It appears in the other case, which is substantially between the same parties, that Thomas Turner purchased the 120-acre tract of land from Rufus K. Hill and Elizabeth, his wife, took a conveyance from them, went into possession of the land, and remained in possession until his death, in the year 1875 or 1876. He left a widow and certain heirs, named in the bill. His widow and one of the heirs, Rice D. M. Turner, continued to live upon the land until the spring of 1882. In

March, 1880, Rice D. M. Turner obtained a conveyance to himself, from Rufus K. Hill and wife and Melvina Hamel, for the land, at the nominal consideration of $175, but in fact for the consideration of $37.50. In October, in the year 1881, R. D. M. Turner and wife, together with John Graham, Jr., who seems to have acquired some mineral interests therein from R. D. M. Turner, conveyed the land to Joseph I. Doran, who conveyed it to the Southwest Virginia Improvement Company, and that company conveyed it to the trustees of the Flat-Top Land Trust, who are now in possession of the land, claiming the whole of it adversely to the complainants, and denying their right to partition.

The defendants insist that our statute (Code 1887, sec. 2562), which authorizes a court of equity in a partition suit to settle all questions of law which may arise in the case, does not authorize such suit where a defendant to the suit in possession of the land asserts an adverse claim, and denies the right of the claimants to partition. They base their contention upon two grounds :

(1) That the statute was not intended to provide for such a case.

(2) That, if it did, it would be unconstitutional, in this, that it deprives the adverse claimant of the right of trial by jury, which is guaranteed to him by section 13, Art. I., of the Constitution.

Before the enactment of the statute in question, great delay and many difficulties frequently arose in suits for partition where questions of title were involved, and, to obviate these delays and difficulties, the statute was passed which authorizes a court of equity in suits for partition to decide all questions of law which may arise in such cases. Of course a partition suit cannot be made a substitute for an action of ejectment; and if the defendant in such suit does not claim under any one who was a joint owner, such as a coparcener, joint tenant,

or tenant in common with the complainant, or those under whom he claims, then it is clear that such suit would not be proper ; but if the defendant does claim under one who was a joint owner with the complainant, or those under whom he claims, the defendant cannot defeat the right of the complainants to have their legal rights settled in a suit for partition by merely alleging and proving that he denies the rights of the complainant, and holds adversely to him. If the jurisdiction of the Circuit Court could be defeated in this manner, the statute would be of little value, and would fail to attain the chief object for which it was passed. 2 .Minor Inst. (last ed.), 485 ; *Currin* v. *Spraull*, 10 Gratt. 147, 148 ; *Davis* v. *Tebbs*, 81 Va. 600 ; *Bradley* v. *Zehmer*, 82 Va. 685 ; *Fry* v. *Payne*, 82 Va. 759.

As to the other ground, that the statute is unconstitutional, because it deprives the defendant of the right of trial by jury, which is guaranteed to him, little need be said. The provision in any constitution, whether State or Federal, which guarantees the right of trial by jury, must be read in the light of the circumstances under which it is adopted. Unless the right of trial by jury existed at the time of its adoption, in the particular case, it could hardly be contended that such a right was to be given by the Constitution, unless it expressly so provided or it was necessarily implied. The statute in question was in the Code of 1849. Since then the people of the State have adopted the Constitution of 1851 and the present Constitution, and, it must be presumed, with full knowledge of such statute, and with the further knowledge that with that statute in force a trial by jury in such cases could only be had when a court of equity in its discretion desired it, and not as a matter of right. The constitutionality of the statute, as well as its wisdom, seems to have been concurred in by the profession, as, during the long period it has been in force—now nearly fifty years—its constitutionality has

never, so far as we know, been heretofore questioned in this court. The statute is, in our opinion, clearly constitutional.

The defendants also claim that they, and those under whom they claim, have been in the adverse possession of the land, claiming it as their own, for more than ten years prior to the institution of this suit. Whether this contention is true or not depends upon the character of the possession of R. D. M. Turner, one of the heirs of Thomas Turner, deceased. If his holding prior to his conveyance of the land to Joseph I. Doran be construed to be adverse to the other heirs of Thomas Turner, and not as a coparcener with them, then the adverse holding of the defendants and those under whom they claim has been more than ten years, and the statute of limitations would bar the right of the complainants to partition, except in the case of the married woman and infants. But, if R. D. M. Turner's possession was not adverse, then the statute does not apply. It becomes material, therefore, to inquire into and to determine the character of his holding.

In the year 1875 or 1876, when Thomas Turner died, R. D. M. Turner was upon the land, and continued upon it until after his sale to Doran, in October, 1881. R. D. M. Turner claims that soon after his father's death he made a parol contract with all his heirs, except one of his brothers and the children of a sister, by which he purchased the land in consideration of his paying the debts of his father and taking care of his widow during the remainder of her life. There is no evidence in writing of any such contract, and the parol evidence of its existence, except with one sister and nephew, is altogether unsatisfactory. The burden of proving that R. D. M. Turner had made such contract, if relied on to show that he was not holding the land for the other heirs of Thomas Turner, and as a coparcener with them, was upon the defendants, and ought to have been established by clear and satisfactory proof. As between coparceners and others

claiming in privity, the entry and possession of one is always presumed to be in maintenance of the right of all; and this presumption will prevail in favor of all until some notorious act of ouster or adversary possession is brought home to the knowledge of others, or it be clearly shown that he has become the owner by purchase. A clear, positive, and continued disclaimer of title, and the assertion of an adverse right, brought home to the knowledge of the other coparceners, are indispensable, although great lapse of time, with other circumstances, may warrant the presumption of a disseisin or ouster by one coparcener or other joint owner. *Stonestreet* v. *Doyle*, 75 Va. 356, 379 ; Freem. Coten., sec. 166.

We do not think that the facts and circumstances of this case show any such disseisin or ouster of his coparceners by R. D. M. Turner as is required in such cases, prior to his sale of the whole land to Joseph I. Doran, in October in the year 1881. From that time until the institution of this suit less than ten years have elapsed. The complainants are therefore not barred by the statute of limitations from maintaining their suit for partition.

Neither have the complainants been guilty of such *laches* in asserting their rights as would justify a court of equity in refusing to entertain and enforce them. The defendants had knowledge, actual or constructive, of complainants' rights in that portion of the land which lies in this State when they purchased it. The deed of Thomas Turner from Rufus K. Hill and wife was upon record in the clerk's office of the County Court of Tazewell county. The defendants trace their title from the same vendor, and it was their duty to examine the records and ascertain whether or not their vendors, Hill and wife, had made a conveyance of the land to any other person before they conveyed to R. D. M. Turner. If they had done this, they would have ascertained that Thomas Turner had a conveyance for the land prior to that made to R. D. M. Turner.

The contention of the defendants that, when they were ex-amining the record, they were not required to look beyond the conveyance of Hill and wife to R. D. M. Turner, is wholly untenable. They claim through Hill and wife, and it was their duty to examine the records to see if Hill and wife had made a prior conveyance. If the doctrine which controlled this court in the case of *Doswell* v. *Buchanan*, 3 Leigh 365, is still the rule in this State, as counsel for defendants insist, and as to which we express no opinion, it would have no ap-plication to this case. The chief object of our statutes re-quiring title papers to be registered was for the benefit of creditors and subsequent purchasers, by enabling them to know whom they may credit, and from whom they could safely purchase. Every man is presumed to know the law, par-ticularly a law which was made for his special benefit. Every prudent man about to purchase land searches the records to see whether the property has been previously conveyed or en-cumbered. It is gross negligence not to do so. Whether the defendants knew in fact that Hill and wife had made a con-veyance to Thomas Turner or not, before they conveyed to R. D. M. Turner, is immaterial, as they had constructive no-tice of such conveyance, and in neither view can they be con-sidered as purchasers for value without notice.

The defendants insist that the conveyance of Hill and wife to Thomas Turner passed no interest in the land, because the land was then held by a trustee for the benefit of Mrs. Hill, and she was a minor ; and, that since Thomas Turner took no interest in the land by that conveyance, he had no interest in it when he died which could pass to his children ; and that they did not occupy the relation of coparceners or joint owners. Even if it were true that the deed of Hill and wife to Thomas Turner was insufficient to convey their interest in the land, he took possession under the conveyance, and died in such possession ; and his rights in the land, whatever they were,

and possession of it, descended to his heirs; and as to such rights and possession his heirs occupied the same relation of trust and confidence to each other as they would if their ancestor's title had been good. The relation of trust and confidence which coparceners sustain to each other is the same whether the title of the ancestor to the property in question be good or bad. To hold otherwise would greatly impair the value of the rule, and render its application very difficult. If a distinction were to be taken in regard to the duties of coparceners to each other, and the restraints imposed upon them, based upon a difference between want of title and defective title, an embarrassing question might arise as to the point when a defective title becomes so defective that it may be considered as no title at all. In all cases where the outstanding title is paramount to the title of the coparceners, their title, though it may be termed " defective " only, is in fact no title whatever. To hold that coparceners are bound by this relation of trust and confidence only when their ancestor had title would be in effect to hold that they are freed from all the restraint of the doctrine except where neither can injure the other.

When R. D. M. Turner took a conveyance to himself from Hill and wife for the same land which they had conveyed, or attempted to convey, to his father, the conveyance was for the common benefit of all his coparceners. The legal title acquired by him was held in trust for the others, if they chose within a reasonable time to claim the benefit of the purchase, by contributing, or offering to contribute, their proportion of the purchase money. 2 Minor Inst., 194, 195 ; Freem. Coten., sec. 154 ; *Buchanan* v. *King's Heirs*, 22 Gratt. 414.

The record does not show that R. D. M. Turner, after his conveyance from Hill and wife, ever informed his coparceners of his purchase, or what he had paid for the land, nor does it show that they knew of such conveyance. In fact, his con-

duct in stating the consideration in the conveyance at nearly five times as much as it really was, and his reluctance when on the witness-stand to state what the real consideration was, are strongly persuasive of the fact that he wished to conceal rather than to disclose his purchase and the consideration paid. It does not appear that the complainants were in default in not offering to pay their share of the costs of the outstanding title when they instituted their suit. A coparcener cannot purchase an outstanding title, falsely state the consideration in his deed, and not communicate the facts connected with his purchase to his coparceners, and then rely upon mere lapse of time to defeat their right to get the benefit of such purchase by paying their share of the actual consideration paid.

A portion of the 120-acre tract of land sought to be partitioned in this cause is situated in the State of West Virginia, and, while it is conceded by the counsel of the complainants that the courts of this State have no jurisdiction to partition lands lying in another State, yet they insist that, since the court has jurisdiction of all the parties in interest, it can compel the defendants to make such conveyance of the land in that State as will protect their rights in it.

It is true that the jurisdiction of a court of equity has been sustained in cases of fraud, of trust, or of contract, wherever the parties interested may be found, although lands not within the jurisdiction of the court may be affected by the decree. *Davis* v. *Morris's Ex'ors*, 76 Va. 21. There is a charge in the bill that the defendants acquired their conveyances to the land with knowledge of the complainants' rights therein, and for the purpose of defrauding them. The deed of Hill and wife to Thomas Turner was recorded in the clerk's office of the County Court of Tazewell county; and the defendants, in taking their conveyances for the land, so far as lies in this State, had constructive notice, at least, of the rights of the complainants. But the deed to Thomas Turner was never re-

corded, so far as the record shows, in the State of West Virginia, so as to give constructive notice of his rights, or the rights of the parties who claim under him, to the land which lies in that State. Neither is it proved that the defendants had actual notice of such rights. The evidence fails to show a case of fraud, actual or constructive, or to show any relation of trust or contract between the parties which would bring this case within that class of cases where courts of equity in one State will compel parties within their jurisdiction to make conveyances of lands within a foreign jurisdiction, in order to do justice between the parties.

The complainants, except Elizabeth Janney and Crocket Mitchell, are entitled to have partition made of so much of the said 120-acre tract of land as lies in this State, but as to that portion of the land which lies in the State of West Virginia their bill must be dismissed for want of jurisdiction, but without prejudice to their rights.

We are of opinion that the decree appealed from must be reversed, and the cause remanded to the Circuit Court of Tazewell county, to be there proceeded in, in accordance with the views expressed in this opinion.

> *Decree in Case No. 1 Reversed.*
> *Decree in Case No. 2 Affirmed.*