# CHARLESTON.

HITCHCOX v. MORRISON *et al.*

## Submitted June 19, 1899—Decided Dec. 2, 1899.

1. EQUITY JURISDICTION—*Adverse Title.*

    A court of equity has no jurisdiction to settle title to real estate between adverse claimants unless the plaintiff has some equity against the party claiming adversely to him. An equity against other persons will not give such jurisdiction. (p. 214).

2. TITLE—*Cloud—Possession—Equity.*

    Those only who have a clear legal and equitable title to land, connected with actual possession, have a right to claim the interference of a court of equity to give them peace, or dissipate a cloud on their title. (p. 214).

3. COMMISSIONER'S SALE—*Deed—Color of Title.*

    A deed made by a special commissioner in a chancery cause, under a decree confirming the sale, purporting to convey the real estate described in the deed, gives color of title in the

grantee, notwithstanding irregularities in the proceedings in such cause and sale. (pp. 214-215).

Appeal from Circuit Court , Ritchie County.

Action by Victor V. Hitchcox, by his next friend, against William L. Morrison and others. Decree for defendants, and plaintiff appeals.

*Modified.*

DAVE D. JOHNSON, for appellant.
DAVIS & WOOD, for appellees.

McWHORTER, JUDGE:

William Hitchcox made his will, dated the 20th day of July, 1867, devising all his real estate to Phoebe Hitchcox, his wife, for and during her natural life; remainder in equal shares to his children, Michael M., William L., Waldo P., Nicklin K., and Florence P. Hitchcox. The last named died intestate and without issue, so that the remainder went to the four brothers. Michael M. became involved. His creditors obtained judgments against him, and instituted suit in chancery to subject his lands to the liens of their judgments. During the pendency of the suit, Michael M. Hitchcox died. After his death another suit was instituted against his widow and heirs at law for the same purpose, The suits were consolidated. A reference was had to a commissioner to ascertain and report of what real estate said M. M. Hitchcox died seized and possessed, and the liens thereon. A decree for the sale of his lands was entered ,and the lands sold by a special commissioner. Among the lands so sold was the undivided one-fourth of a tract of two hundred and ninety-three acres which was. devised through the said will of William Hitchcox, at which sale A. S. Core became the purchaser of the said undivided one-fourth part of said two hundred and ninety-three acres, at the price of six hundred and fifty dollars. The sale was reported to the court, and duly confirmed by decree entered in said causes on the 24th day of April, 1877. After the confirmation of said sale, the purchaser, A. S. Core, filed his bill in the circuit court of Ritchie County against W. L. Hitchcox, Waldo P. Hitchcox, and Nicklin K. Hitchcox, the owners

of the other three-fourths of said tract of two hundred and ninety-three acres (sometimes designated as two hundred and eighty -two acres), for the partition of said tract of land. On the 26th of April, 1878, a decree was entered in the cause appointing commissioners to partition the tract between the four owners thereof. On the 2d of October, 1878, the commissioners filed their report of partition, and lot No. 2, described by meets and bounds, containing eighty and three-fourths acres, was set apart and assigned to A. S. Core, the plaintiff; and on the 29th day of the same month of October a decree was entered confirming said report of commissioners of partition, and assigning in severalty to each of said four owners the parcels of land as described and set out by the metes and bounds in said report; assigning to A. S. Core his said lot No. 2, containing eighty and three-fourths acres, and the lots Nos. 1, 3, and 4 to the other holders, respectively; and appointing R. S. Blair a special commissioner to make, execute, and acknowledge a deed with special warranty to each of such parties for their respective interests as described in said report and also in said decree. On the 19th day of May, 1879, said A. S.Core, by agreement in writing, sold his said tract of eighty and three-fourths acres so purchased by him, but thereafter described as containing eighty-two acres, to William L. Morrison and John M. Morrison, who went into possession soon after the said purchase, by agreement, and about the 1st of September, 1879, began to clear up the land and build a dwelling house on it ; and the said William L. Morrison moved in it and made his home there. The land, when they purchased it, was still "in the woods." Another house was built on the eighty-two acres later, the same fall, which was occupied several years by Isaac L. Morrison, a brother of William L.; and after he left it, Frank Baldwin moved into it. William L. has lived there ever since he went onto the land, the 1st of September, 1879, clearing and improving the land. On the 29th day of March, 1882, A. S. Core and C. M. Core, his wife, conveyed said eighty-two acres of land to said Willam L. Morrison and John M. Morrison, in consideration of one thousand, one hundred dollars in hand paid, with general warranty. On the first Monday in September, 1887, Vic-

tor V. Hitchcox, a minor child of the deceased, M. M. Hitchcox, suing by his next friend, Ellen A. Hitchcox, filed his bill in the said circuit court of Ritchie County against the widow of said M. M. Hitchcox and his brothers and sisters, the other heirs at law of said decedent, and the owners of the other three-fourths of said two hundred and ninety-three acres, and also making said William L. Morrison and John M. Morrison defendants; alleging that the said heirs at law of said M. M. Hitchcox were the owners of an undivided one-fourth of said tract, and that said widow was entitled to dower therein, and that they, as such owners, were entitled to have a partition of said tract and further alleging that said Morrisons were in possession of a portion of said land, and asserting some sort of a claim to an interest therein, and charging that they had no right, title, or interest therein; that on the 22d of October, 1888, there was placed on record in the county court clerk's office of said Ritchie County what purported to be a deed from R. S. Blair, special commissioner, to one A. S. Core, and purporting to convey an undivided interest in said land, but that no sale of said land or any interest therein was ever decreed in any legal proceedings set up in said pretended deed, no legal sale of said land or any interest therein was ever made by said Blair, special commissioner, or otherwise, and neither said land nor any interest therein was ever embraced or contemplated in the legal proceedings mentioned in said pretended deed; and praying that the Morrisons be required to disclose and show by what right or authority they were asserting possession to any part of said land or any interest therein, and the character of title they claim; that the said pretended deed of conveyance made by Special Commissioner Blair to Core, and the conveyance by Core to Morrisons, be declared null and void, and of no effect to create any title or interest in said Morrisons, or otherwise, to said land; and for the partition of said tract among the parties entitled thereto.   J. M. and W. L. Morrison answered the bill, setting up their title from A. S. Core to the eighty-two acres, and their possession thereunder.

On the 31st of October, 1892, the court entered a decree in accordance with the prayer of the bill, removing the

deeds from Blair, special commissioner, to Core, and from Core to Morrisons, as cloud upon the title of plaintiffs, and appointing commissioners to partition said tract of two hundred and ninety-three acres, giving the widow and heirs at law of M. M. Hitchcox the one-fourth thereof. The commissioners reported, adopting the partition theretofore made in the suit said A. S. Core prosecuted for that purpose; giving to the said heirs of M. M. Hitchcox the same lot or portion which was in possession of said Morrisons. From which decree the Morrisons appealed to this court (20 S. E. 595), and the decree was reversed for want of parties,—the court holding that A. S. Core, under whom the Morrisons were holding, and from whom they derived their title, was a necessary party,—and the cause was remanded to the circuit court; and in the said cause in the circuit court, on the 21st day of June, 1895, it was suggested that the plaintiff, Victor V. Hitchcox, had arrived at the age of twenty-one years, and had also departed this life; and suggesting also, the death of his next friend Ellen A. Hitchcox; and Columbia V. Hitchcox, the mother of said plaintiff, and Clay B. Hitchcox and others, heirs at law of said Victor V. Hitchcox, tendered their amended bill, which upon their motion was ordered to be filed, and the same was remanded to rules, with leave to sue out process thereon. Summons was duly executed as to the defendants William L. Morrison, John M. Morrison, the widow and heirs of M. M. Hitchcox, deceased, J. P. Strickler, Will A. Strickler, T. E. Davis, and Joab Martin, executors of A. S. Core, A. C. Blair, Lizzie Blair, R. S. Blair, Jr. Jane F. Martin, L. E. Pratt, Ella C. Tabler, D. C. Tabler, and C. M. Core. The amended bill refers to and makes the original bill a part of the amended bill, and recites the decree of partition, and removal of the cloud of title of Core and the Morrisons from plaintiffs' title, the appeal of the Morrisons, and reversal of the decree; alleging that the widow of William Hitchcox, to whom he devised said land for life, died on the————day of July, 1877, and that said M. M. Hitchcox died April 21, 1874; that none of the children of William Hitchcox had any interest in said tract of land, except in reversion, until after the death of the widow , and at her death the said two hun-

dred and ninety-three acres reverted in fee to W. L. Hitchcox, Waldo P. Hitchcox, and Nicklin K. Hitchcox, each a one-fourth, and to the heirs of M. M. Hitchcox an undivided one-fourth interest; that, at the time of the alleged proceedings to subject to sale the real estate of M. M. Hitchcox to pay his debts, neither he while living, nor his heirs after his death, had any interest in said land, except the said reversionary interest, and that the suits for the purpose of selling the lands of M. M. Hitchcox, and of his estate after his death, were instituted, the decree of sale rendered, and sale made, and confirmation of sale to A. S. Core,—all occurred prior to the death of the widow of William Hitchcox, so that neither said M. M. Hitchcox while living, nor his heirs at law after his death, had any interest in said land, other than their said reversionary right; that the heirs of M. M. Hitchcox had been joint tenants with the owners of the other portions of said land ever since the death of the widow of said William Hitchcox, deceased, and as such joint tenants they had never been lawfully ousted of their right and interest therein, nor deprived of their right of possession thereof; that not until the 3d of June, 1882, did the heirs of M. M. Hitchcox have any notice, actual or constructive, that any other person or persons whatsoever claimed the said interest in said land; that the recording of said pretended deed from A. S. Core to said Morrisons was the first legal constructive notice that any other claim was made upon said land; that said A. S. Core had no deed or paper title of any character whatever prior to the year 1888, and in fact never had any valid deed therefor; that said Core died August 11, 1888, and the pretended deed from R. S. Blair, special commissioner, to said Core was not made or executed until after Core's death, so there was no evidence of any claim or title whatsoever, or record, against said interest in said lands owned by said M. M. Hitchcox heirs until June 3, 1892; that said heirs were not parties to the proceedings of Core for the partition; that they had no notice thereof, and in no wise were affected by the partition proceedings, but they were and still are the co-tenants in every part and parcel of said land with the said Waldo P., Nicklin K., and William L. Hitchcox, and their assignees,

and said heirs were not and could not be, in law, affected by said proceedings, so as to devest them of their interest in any part of said land, nor to set off a certain portion thereof, to be held by A. S. Core or any other person, to them; that, in order to constitute an adverse possession, there must be some color or show of title in the person setting up such possession, of a character to constitute some sort of a paper title, of which notice should be given, either actual or by recordation, to the person whose possession is sought to be ousted; that there was no pretended possession, other than as co-tenants, until after March, 1882; that none of the decrees made in said pretended partition proceedings were recorded, and no deed was ever made or recorded in said partition proceedings; that the title of said heirs is valid and indefeasible to the one undivided fourth part of said two hundred and ninety-three acres, and they have never been devested thereof, nor has there been any legal adverse possession sufficient to oust them of their right of possession thereto; that Nicklin K., Waldo P., and William L. Hitchcox, the original owners of undivided interests in said two hundred and ninety-three acres under the will of William Hitchcox, are now all dead; that the interest of Nicklin K. is owned by defendants J. P. Strickler and Will A. Strickler; that the interest of Waldo P. is now owned by J. B. Pratt and Lee Pratt; that the interest of William L. Hitchcox is also owned by J. B. and Lee Pratt. And they pray that their amended bill may be filed in said original cause of Victor V. Hitchcox against Columbia V. Hitchcox and others; that the suit be revived, etc.; that the parties named, including the executors, widow, and heirs of A. S. Core, the widow and heirs of M. M. Hitchcox, the said Morrisons, and the present owners of the other interests in said two hundred and ninety-three acres, be made defendants to the amended bill, and that they be required to answer the same as well as the original bill; and for the relief asked for in the original bill, the removal of the cloud, and the partition of the land.

At September rules, 1895, summons returned executed as to defendants J. S. Pratt, Margaret Reitz, and L. G. Reitz, and decree *nisi* as to them; and J. M. and W. L.

Morrison filed their demurrer to amended bill, in which plaintiffs joined. ' Bill taken for confessed, and cause set for hearing as to other defendants served with process at August rules.   On the 6th of November, 1895, the demurrer was argued and overruled, and ·leave granted defendants to answer the bill within thirty days from the rising of the court.   On the 5th of March, 1896, the cause was revived on said amended bill, and ordered to be proceeded in, in the name of said plaintiff's in the amended bill, the heirs at law of said Victor V. Hitchcox, deceased; and defendants John M. Morrison and William L. Morrison tendered their joint answer to the amended bill, which was filed, and Thomas E. Davis and Joab Martin, administrators of A. S. Core, also tendered their answer to said amended bill, which was filed, and plaintiffs replied generally to both of said answers.  Said Morrisons, in answering, adopted their answers to the original bill so far as applicable; admitted the decree, their appeal, and reversal of decree by the Supreme Court; and denied the material allegations of the amended bill; pleaded the suits of Rosenheim against M. M. Hitchcox, and P. T. Jeffreys against the M. M. Hitchcox heirs, and the partition suit of Core, in bar; and pleaded the statute of limitations of ten years and five years, and their failure to correct the decrees, if void, within five years, and that·the proceeds of the sale of the one-fourth interest were applied to the payment of the debts of M. M. Hitchcox's estate.   The defendants Thomas E. Davis and Joab Martin, executors of A. S. Core, also filed their answer.   Depositions were taken and filed by both plaintiffs and defendants, and on the 10th day of September, 1896, the cause was submitted upon the papers formerly read, the proofs taken in  cause upon the amended bill,  the answers, and general replications thereto, and bill taken for confessed as to other defendants served with process, and arguments of counsel, when it was decreed that the plaintiffs were not entitled to the relief prayed for; and the original and amended bills were dismissed, and costs awarded the defendants Morrisons and Core, executors, against plaintiffs, from which decree plaintiffs appealed.

This is a suit, the prime object of which is to remove

cloud from plaintiffs' title. Evidently the proceeding for partition is merely used for jurisdictional purposes. "The jurisdiction takes its rise in the doctrines of *quia timet*, in order to give repose and peace to the party in possession by virtue ot a rightful claim or title against him who might vex and harass with suits after the right had been fairly tested in a court of law, or against a deed or other evidence of title which had been fraudulently obtained, and which might be set up after the evidence which could manifest its true character had become obscure or had passed away." *Huntington* v. *Allen*, 44 Miss. 654. In *Orton* v. *Smith*, 18 How. 263, 15 L. Ed. 393, it is said: "Those only who have a clear legal and equitable title to land, connected with possession, have a right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title." And in *Frost* v. *Spitley*, 121 U. S. 553, 7 Sup. Ct. 1131, 30 L. Ed. 1012: "The bill cannot be maintained without clear proof of the possession and legal title. A person out of possession cannot maintain such a bill, whether his title is legal or equitable; for, if his title is legal, his remedy at law, by action of ejectment, is plain, adequate, and complete. And, if his title is equitable, he must acquire legal title, and then bring ejectment." In *Stuart's Heirs* v. *Coalter*, 4 Rand 74: "A court of equity has no jurisdiction to settle the title and bounds of land between adverse claimants, unless the plaintiff has some equity against the party claiming adversely to him. An equity against other persons will not give such jurisdiction." Plaintiffs have no equity against the defendants John M. Morrison and William L. Morrison, who have been in the actual possession of the whole interest claimed by plaintiffs in the two hundred and ninety-three acres of land. From the time they took possession, in 1879, that possession was open, notorious, exclusive, adverse, and hostile, and under "color of title," In *Mullan's Adm'r* v. *Carper*, 37 W. Va. 215 (16 S. E 527) (Syl. point 1),it is held that "any written instrument,however defective or imperfect, and no matter from what cause invalid, purporting to sell, transfer, or convey title to land, which shows the nature and extent of the party's claim, constitutes color of title, within the meaning of the

law of adverse possession." And in *Swann* v. *Thayer* 36 W. Va. 46, (14 S. E. 423) (Syl., point 2): "A deed purporting to convey land in fee under a void sale, made under a deed of trust, by a trustee having no legal authority, gives color of title." *Swann* v. *Young*, 36 W. Va. 57, (4 S. E. 426). The question arises upon the demurrer whether John M. Morrison and William L. Morrison are proper parties to this suit, and whether they can be compelled to remain parties, and have their rights adjudicated in a court of equity, as in the case of *Carberry* v. *Railroad Co.*, 44 W. Va. 260, (28 S. E. 694), where the plaintiffs were claiming the original right, unaffected by the sale of the land as forfeited to the state, while the railroad company was claiming under a proceeding adverse to plaintiffs' title; selling it as forfeited and lost to them by their default in paying the taxes. In that case JUDGE BRANNON, in his opinion, says: "There is no ligament of community of interest between them. The plaintiffs' counsel argues that the bill makes, not the case of a substantial adverse title, but it represents the claim of the company as so thin as to be a pretended title. But it has body enough to suggest to the plaintiffs the necessity of bringing it before the court to have it dispelled as a cloud, and it must therefore have an entity sufficient to call it an adverse title. If a nonentity, why bring it in? And, besides, the allegation that it originated under a sale of a court as forfeited lands tells us that it is a title of sufficient substance to warrant us in treating it as a conflicting title." The judge further says: "It is needless to expand here upon the proposition that equity will not entertain a bill which is but an action of ejectment, and thus try adverse title, unless it be incidental to relief under a known head of equity jurisdiction. It is, however, claimed that the court has jurisdiction for partition, and, as incidental to its exercise, will settle all questions affecting the legal title, under section 1, chapter 79, Code 1891, and so try titles entirely adverse. If so, the adverse claimant, having no community of interest with the other party, and being in no view a co-tenant, but standing out on his own independant right, denying all right in his adversary, and that adversary confessedly having no right to a mere share in the other's ownership, but

to all, if to anything, is deprived of his right to a jury trial under that clause of the constitution saying that no one shall be deprived of his property without judgment of his peers. Next to a trial for life or liberty, the jury right is most essential and sacred in a legal proceeding to take away a man's freehold,—his home and castle,—as of inferior title. The statute never was intended to subject a stranger, an enemy, to the right under which partition is sought, to a loss of this jury trial. Where there is conflicting claim to share in the land under the same right under which partition is sought, and the determination of the conflict is merely incidental to the partition, the statute applies, and gives the court power to decide such conflict. That is not a case of claims utterly hostile, each demanding, not a share, but the whole; one alone entitled to the whole. That is not partition. Such is this case. I ask, as Judge Tucker asked in *Lange* v. *Jones*, 5 Leigh, 195, what equity have plaintiffs against the railroad? There is no common *seisin* between them. I will not dwell further upon the construction of this statute, as I gave my construction of it in *Davis* v. *Settle*, 43 W. Va. 17 (26 S. E. 557-561). See *Pillow* v. *Improvement Co.*, 92 Va. 144 (23 S. E. 32)." I have quoted from the opinion in the *Carberry Case* thus extensively because in the case in hand it applies as well as to the case in which it was written. It seems to be well settled, as stated in point three of the syllabus in the case quoted from, that "a court of equity, under its jurisdiction to remove a cloud over the title to land, will not entertain a bill by a plaintiff who has only constructive, but not actual, possession." *Davis* v. *Settle*, 43 W. Va. 17 (26 S. E. 557); *Moore* v. *McNutt*, 41 W. Va. 695 (24 S. E. 682); *Clayton* v. *Barr*, 34 W. Va. 290 (12 S. E. 704). In *De Camp* v. *Carnahan* 26 W. Va. 839 (Syl, point 2), it is held that "a court of equity has a right to cancel a deed which is a cloud upon the title of one out of possession of the land." But in that case the jurisdiction was sustained upon the ground of partition, the equities existing between the parties to the suit, the defendant, the St. Lawrence Boom and Manufacturing Company having the title to the residue of the property, seven-twelfths, while the plaintiff had title to five-twelfths; and the court,

having jurisdiction for partition, would pass on the title incidentally to the relief. The syllabus, standing as it does as an abstract proposition of law, is not in accord with a long, unbroken line of decisions of Virginia and West Virginia, and is somewhat misleading. The final decree in the case at bar shows that the cause was heard on its merits, and the bills dismissed. The court not having the jurisdiction to grant the relief prayed for, and it being held that: "A decree, on full hearing, dismissing a bill generally, without reservation of right to the plaintiff to sue at law, is conclusive upon all the matters involved in the case, even though there was no jurisdiction in equity because of adequate remedy at law. Unless it otherwise appears from the decree, it will be taken that the dismissal was upon a hearing of the merits" (Carberry v. Railroad Co., supra),—the decree should be amended by adding, "but such dismissal is without prejudice," and with such modification the decree is affirmed.

*Affirmed.*