# Richmond

JOHN H. BRAXTON V. WILLIAM PHIPPS, WHO SUES, ETC.

April 23, 1945.

Record No. 2903.

Present, All the Justices.

The opinion states the case.

*James C. Page*, for the appellant.

*C. A. McKenzie*, for the appellee.

HUDGINS, J., delivered the opinion of the court.

James Braxton died intestate in 1910 seized and possessed of a house and lot in the city of Richmond known as 1110 Tyler Street. He was survived by his widow, Minerva Braxton, and three children, John H., Sarah and Henrietta Braxton, his only heirs at law and next of kin. Minerva Braxton died on December 25, 1927. Sarah died in 1936 intestate and without issue. Henrietta died in 1939 intestate, leaving William Phipps, her husband, and Frances Phipps Jackson, an adopted daughter, her sole heirs at law and next of kin.

William Phipps, in his own right and as administrator of his wife's estate, instituted this suit against Frances Phipps Jackson and John H. Braxton, praying that John H. Braxton be required to account for the rents and profits he had collected on the property of which James Braxton died seized and possessed. After the suit was instituted, the property, 1110 Tyler Street, was sold in a condemnation proceeding pending in the Hustings Court of the city of Richmond to the Federal Housing Authority for the sum of $1,500, and, by agreement of parties, the net proceeds from this sale were deposited in the bank to the credit of the court in this cause.

John H. Braxton filed an answer and cross-bill in which he alleged that in 1893 he had paid the sum of $975, which was secured by a mortgage on the property, and that since that time, or certainly since his father's death in 1910, his possession of the property had been so open, notorious, exclusive, continuous and hostile that he had acquired ownership and title by adverse possession.

The various issues raised by the pleadings were referred to Bernard W. James, one of the commissioners in chancery of the trial court, who, after a careful and pains-

taking investigation, filed his report holding that John H. Braxton was entitled to one-half of the property in controversy—one-third inherited from his father, James Braxton, and one-sixth from his sister Sarah—and that Frances Phipps Jackson was the owner of the other half, subject to the curtesy right of William Phipps. Exceptions to the report were duly taken and overruled, and the report was confirmed. From that adverse decree John H. Braxton obtained this appeal.

The petition contains four assignments of error, but the only assignment urged in the oral arguments or in the briefs is based on the refusal of the commissioner and the trial court to hold that appellant had acquired ownership and title to the entire property by adverse possession.

It is conceded that, on the death of James Braxton in 1910, title to the real estate passed to his three children, subject to the dower right of the widow. All interested parties, including the widow, continued to live in the house and regarded it as their home for many years after the death of James Braxton. During these years a part of the premises seems to have been rented to other parties. John H. Braxton, as a real estate agent, entered the property on his books in the names of James Braxton and, after his death, in the name of Minerva Braxton, and continued to collect the rents, a part of which he paid to his mother, Minerva Braxton, or used for her benefit. Shortly before her death in 1927, Minerva Braxton moved away from this property and lived with her daughter until her death. However, during this period, rents were collected and paid to her or used for her benefit as before. Both girls lived on the premises as their home until they were married. John H. Braxton took no steps to acquire title to the property from his sisters, nor does it appear positively that his sisters demanded an accounting of his agency.

██ ██ Each and every tenant in common is entitled to an undivided portion of the whole, hence possession by one is regarded as possession in the interest of all unless it be expressly denied. In order for one co-tenant to obtain

ownership and title by adverse possession, there must be a clear, positive and continued disclaimer of title, and the assertion of an adverse right brought to the knowledge of the other co-tenants. This is essential. *Roller* v. *Armentrout*, 118 Va. 173, 86 S. E. 906; *Pillow* v. *Southwest Va. Improve. Co.*, 92 Va. 144, 23 S. E. 32; Minor on Real Property, 1st Ed., vol. 1, sec. 923; Burks Pl. & Pract., 3rd ed., sec. 210, p. 360.

The only evidence tending to support the claim of adverse possession is the testimony of the appellant, but his testimony is contradicted by his own records, which were reluctantly produced, and by the record in the clerk's office of the Chancery Court, which showed that James Braxton, at the time the loan from B. F. Turner & Company was paid in May, 1893, had executed another deed of trust to secure the payment of another note for $800; and this deed of trust was not released until July, 1895. Appellant's explanation of these two transactions was not clear and satisfactory. He further admitted that he had never informed his sisters that he claimed title to the whole property. No credence was given his testimony by either the commissioner or the trial court.

The record discloses that appellant has totally failed to substantiate his claim of adverse possession to the property in question. The decree is affirmed.

*Affirmed.*