# Staunton

HENRY DANIEL RUTLEDGE, ET AL. v. LELIA RUTLEDGE, ET AL.

September 11, 1963.

Record No. 5577.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

The opinion states the case.

*A. G. Hutcheson* and *John Y. Hutcheson,* for the appellants.

*W. E. Neblett* and *R. Page Morton* (*R. E. Garland,* on brief), for the appellees.

I'Anson, J., delivered the opinion of the court.

This suit was instituted on July 29, 1955, by Henry Daniel Rutledge, Maggie Hardy Wilmouth and Emily Hardy Lacks, appellants herein, against Lelia Rutledge, Fannie Edgerton, in her own right and committee for Lelia Rutledge, L. J. Griles, Rosa Griles, David Rutledge, Sevilla G. Hughes, J. D. Griles, Jr., Mollie R. Hardy, John Rutledge, Billy Rutledge, Thomas Rutledge, H. Arnold Powell and Oscar C. Powell, appellees herein, praying for the partition of a tract of land containing approximately 320 acres lying in Charlotte county, Virginia, of which appellants alleged that they and the appellees are joint owners.

The bill alleged, *inter alia*, that D. S. Griles and Emily H. Griles, his wife, died intestate, seised and possessed of the tract of land

sought to be partitioned, which was devised to them by will of Nancy E. Brewer; that one of the appellants, Henry Daniel Rutledge, inherited a one-seventh interest in the lands through his mother, Sevilla G. Rutledge, who was one of seven children of D. S. and Emily H. Griles; that the other appellants, Maggie Hardy Wilmouth and Emily Hardy Lacks, each inherited a one-fourteenth interest in the property through their mother, Etta Griles Hardy, another daughter of D. S. and Emily H. Griles; and that the five other children of D. S. and Emily H. Griles, namely: Lelia Rutledge, L. J. Griles, J. D. Griles, J. A. Griles and Daisy Tharpe (sometimes referred to herein as the five Griles children), inherited a five-sevenths interest in the lands.

Appellees filed separate and joint answers denying that D. S. and Emily H. Giles were seised of, possessed or owned any interest in this property. They asserted that under the will of S. E. Brewer, Nancy Brewer was devised only a life interest with the remainder to Martha Temple; that the five Griles children, without any act of fraud, partitioned the 320-acre tract among themselves, or their spouses, by deeds dated July 1, 1924, and that they each acquired title to the partitioned lands by holding adversely to Martha Temple, her heirs, and the appellants; and that the laches of appellants barred the assertion of any rights they may have in the property.

The cause was referred to a commissioner in chancery, who reported that the suit should be dismissed because Nancy Brewer had only a life estate in the property under the will of S. E. Brewer and at her death the entire estate passed to Martha Temple, the remainderman. Whereupon, the chancellor granted appellants leave to file an amended bill.

The amended bill alleged, *inter alia*, that sometime prior to March 17, 1896, Nancy Brewer entered into an agreement with D. S. Griles and Emily H. Griles, her niece, that if they would move on the farm and take care of her she would will them the 320-acre tract; and that immediately upon the death of Nancy Brewer on March 17, 1896, D. S. and Emily H. Griles took possession of the entire property under a claim of right and color of title, and occupied the property adversely to Martha Temple, the remainderman under the will of S. E. Brewer, for more than fifteen years.[1]

The appellees filed general denials to the allegations of the amended bill and the cause was re-referred to the commissioner.

[1] See § 2915, Code of 1887, and § 5805, Code of 1919.

After considering the allegations of the amended bill, the exhibits, the agreed statements of fact, and the depositions theretofore taken, the commissioner reported he was convinced that he was in error in his first report which stated that appellants have no interest in the property. He then reported that the appellants and the other heirs of D. S. and Emily H. Griles were coparceners within the meaning of Code § 8-690; that the other appellees were joint tenants or tenants in common with the appellants; that Henry Daniel Rutledge owns a one-seventh undivided interest in the 320-acre tract, and Maggie Hardy Wilmouth and Emily Hardy Lacks each own a one-fourteenth interest therein, but that the appellants are not entitled to any interest in the improvements on the land; that they are entitled to receive as their interest the sum of $15 per acre, which he had arrived at by adding a certain recognized percentage to the tax assessments against the property appearing on the land books; that the five Griles children, uncles and aunts of the appellants, had "fraudulently kept them [appellants] in ignorance of their rights" in the property; that appellants were not barred by laches from maintaining this suit; and that the partition deeds of 1924 were of no effect.

The chancellor's decree approved and confirmed the commissioner's report in all respects and ordered that appellants and appellees share the costs equally, except that part of the cost incident to the taking of further depositions in connection with the commissioner's second report which was to be borne by appellants.

From this decree we granted appellants an appeal and appellees have assigned cross-error.

Appellants contend that the chancellor erred in decreeing that their interests be sold for $15 per acre and in the provisions for the payment of the costs.

Appellees contend in their assignments of cross-error that the chancellor erred in decreeing that they and appellants are tenants in common, joint tenants or coparceners; that the interests of appellants are not barred by laches; and that there was no variance between the appellants' pleadings and proof.

The evidence shows that S. E. Brewer died during the year 1883 owning the land sought to be partitioned, which he devised to his wife, Nancy E. Brewer, for life, with remainder to Martha Temple.

Sometime prior to Mrs. Brewer's death in 1896, D. S. and Emily H. Griles moved into a small house located in the yard of the Brewer home under an agreement with Mrs. Brewer that she would will

them the 320-acre tract if they would live there and take care of her. Mrs. Brewer's will provided as follows:

"After all my just debts are paid, I give to Daniel S. Grile[s] and Emily Grile[s], his wife, all of my property of every description, to them and their heirs forever, this is in consideration of their taking care of me in my old age."

Immediately after Mrs. Brewer's death, D. S. and Emily H. Griles moved from the small house they occupied in the yard into the Brewer home, farmed all the open land, and claimed ownership of the entire tract. In 1901, when they were selling timber off the land, a stranger questioned whether the Grileses had good title to the property. It was then they discovered that under the provisions of Mr. Brewer's will Mrs. Brewer had only a life estate in the property, but they proceeded with the sale of the timber. D. S. Griles died in 1901, while living on the property, and Mrs. Griles continued to live there. She cut and sold timber off the land in 1906 and 1921 and exercised dominion over the entire 320-acre tract and claimed it as her own until the time of her death in 1921.

Mr. and Mrs. Griles had seven children and all were raised on the Brewer property. One of the daughters, Sevilla Griles Rutledge, died in 1909, survived by her son, Henry Daniel Rutledge, one of the appellants herein. Another daughter, Etta Griles Hardy, died in 1917, survived by her two daughters, Maggie Hardy Wilmouth and Emily Hardy Lacks, the other appellants herein.

The five other children, Lelia Rutledge, L. J. Griles, J. D. Griles, J. A. Griles and Daisy Tharpe, lived on the property with the permission of their mother. They built homes, made improvements and cultivated the open land. All except one married and raised their families there.

On July 1, 1924, the five Griles children who lived on the property partitioned the land among themselves by joint deeds of bargain and sale. The deeds were admitted to record and taxes were assessed in their names and paid by them on their respective parcels. These grantees or their heirs or successors in interest are the parties appellee to this appeal.

Appellants lived in the neighborhood in 1924 when the partition deeds were executed; however, they were then minors between the ages of 8 and 17 and had no actual knowledge of the conveyances. They testified that they did not know they had any interest in the property until 1953 when this fact was revealed to them during a

boundary line dispute which arose out of a description in one of the partition deeds.

At the time of the execution of the partition deeds one of the five Griles children questioned their right to partition all the property without considering the interests of the three children of their deceased sisters. However, they concluded that the appellants would have no knowledge of their rights in the property unless one of the group told them, so they proceeded to partition it among themselves.

Since the 1924 partition deeds some of the appellees have sold small parcels of the property and some of it has been condemned for public purposes. On April 5, 1947, Lelia Rutledge and her husband sold a portion of the property taken by her partition deed and in their deed they referred to it as "a portion of the Nancy Brewer tract which Lelia Rutledge inherited from her mother, Emily Griles."

There was evidence that some of the possessors of the land have placed improvements on the property and some have from time to time cut timber; however, there was no testimony as to the value of the improvements or the timber. The only evidence in the record relating to the fair market value of the 320-acre tract is that it is worth between $60,000 and $80,000, which includes the timber and improvements thereon.

The evidence is silent as to when Martha Temple died, whether she left a will, or who her heirs were. But there is evidence that sometime during the year 1935 persons purporting to be the heirs of Martha Temple raised the question of their rights and interests in the land in a conversation with Henry Rutledge, husband of Lelia Rutledge. These purported heirs have not been heard from since.

Appellees in their brief and in oral argument before us did not attempt to answer appellants' assignment of error that the chancellor erred in awarding $15 per acre to appellants for their interests in the land. They say that the appellants are not joint tenants, tenants in common or coparceners of the land and the chancellor should have dismissed the suit. Hence it is appropriate that we first consider appellees' assignments of cross-error, for if appellees' position is correct we will not reach appellants' assignments of error.

■ In support of the contention that appellants own no interest in the property, appellees argue that D. S. and Emily H. Griles did not take possession of and hold the land adversely to Martha Temple, the remainderman, but held it as tenants at sufferance; that the statute

of limitations did not begin to run against the heirs of Martha Temple until their appearance in 1935, and thereafter the five Griles children held the property adversely to them; and that the five Griles children held the lands adversely to the appellants from 1924, the date of the partition deeds.

It is true that the possession of a life tenant, or one acquiring his interest, is not adverse to the remainderman during the term of the life estate. *Fitzgerald* v. *Fitzgerald*, 194 Va. 925, 929, 76 S. E. 2d 204, 207; *Matthews* v. *W. T. Freeman Co.*, 191 Va. 385, 398, 60 S. E. 2d 909, 915; 31 C. J. S., Estates, § 66A, p. 82; 3 Am. Jur. 2d, Adverse Possession, § 228, pp. 326, 327. But after the termination of a life estate, the possession of a grantee from the life tenant holding under a deed conveying the fee simple is deemed adverse to the remainderman, *Cochran* v. *Hiden*, 130 Va. 123, 138, 107 S. E. 708, 713; *Ontelaunee Orchards, Inc.* v. *Rothermel*, 139 Pa. Super. 44, 11 A. 2d 543, 545; 1 Mich. Jur., Adverse Possession, § 46, pp. 254, 255, and if the remainderman permits the devisee of a fee simple interest under the will of the life tenant to take possession of the property under the will, such possession is adverse to the remainderman so as to bar his title after the expiration of the statutory period. *Ontelaunee Orchards, Inc.* v. *Rothermel, supra;* 3 Am. Jur. 2d, Adverse Possession, § 229, pp. 327, 328; 31 C. J. S., Estates, § 66(b), p. 85.

In the present case D. S. and Emily H. Griles were not simply holding over after the death of the life tenant and asserting no more than a life estate. The Grileses took possession as the fee simple owners of the entire 320-acre tract under a color of title and claim of right pursuant to the provision of Mrs. Brewer's will. They were not holding possession in privity with or subservient to the remainderman and were not tenants at sufferance.

The statute of limitations started running against Martha Temple, or her heirs, when Mrs. Brewer died in 1896. Immediately after her death D. S. and Emily H. Griles moved into the Brewer home and the evidence shows that they held actual, continuous, open, notorious, hostile and exclusive possession of all the property until the death of Mr. Griles in 1901, and Mrs. Griles continued to so hold the property until her death in 1921. Whatever rights the remaindermen had were barred before the death of Emily H. Griles because she had acquired title to the property by adverse possession. Upon her death, intestate, fee simple title to the property descended to the appellants and the five Griles children as coparceners.

Thus the argument that the five Griles children acquired title to the

property by holding adversely to the heirs of Martha Temple after 1935 for the statutory period is without merit. The Temple heirs had already lost all their rights in the property before that time.

Nor did the five Griles children, parties to the partition deeds, acquire title to the land in question by adverse possession against the appellants, their coparceners.

Where the possession of the property is acquired in privity with another, as is true in this cause, the possession of one is ordinarily deemed the possession of all, and this presumption prevails in favor of all until an assertion of an adverse right is brought home to the *knowledge* of a cotenant out of possession. "Knowledge" in this context has been construed by this Court to mean actual knowledge, because of the fiduciary relationship existing among coparceners. *Pillow* v. *Southwest, &c, Imp. Co.*, 92 Va. 144, 152, 153, 23 S. E. 32, 33, 34, 53 Am. St. Rep. 804; *Hulvey* v. *Hulvey*, 92 Va. 182, 187, 23 S. E. 233, 234, 235; *Braxton* v. *Phipps*, 183 Va. 771, 773, 774, 33 S. E. 2d 650, 651; Annotation, 82 A. L. R. 2d at p. 242.

In *Pillow* v. *Southwest, &c, Imp. Co., supra*, this Court said:

"* * * Even if it were true that the deed of Hill and wife to Thomas Turner was insufficient to convey their interest in the land, he took possession under the conveyance, and died in such possession; and his rights in the land, whatever they were, and possession of it, descended to his heirs; and as to such rights and possession his heirs occupied the same relation of trust and confidence to each other as they would if their ancestor's title had been good. The relation of trust and confidence which coparceners sustain to each other is the same whether the title of the ancestor to the property in question be good or bad. To hold otherwise would greatly impair the value of the rule, and render its application very difficult." 92 Va. at pp. 152, 153, 23 S. E. at p. 34.

The parties to the partition deeds of 1924 may have intended to change the character of their possession and thereafter claim adversely to the appellants and not in privity with them. However, the evidence clearly shows that the five Griles children, uncles and aunts of the appellants, fraudulently kept appellants, who were infants at the time, from knowing that they were joint owners of the property until 1953. Since appellants did not know of their ownership until that time, the evidence fails to show that knowledge of the asserted adverse possession of the property by the five Griles children was brought home to the appellants with the degree of certainty that the law requires.

Moreover, the deed of Lelia Rutledge, dated April 5, 1947, wherein she described a portion of the partitioned property as a part of the Brewer tract which she inherited from her mother, Emily H. Griles, belies any claim that she was asserting ownership through her own adverse possession.

■ The appellees say that the appellants are barred from asserting any rights in the property because of laches. The defense of laches is not applicable in this case.

It is a well recognized rule in equity that laches cannot be applied against those who are ignorant of their rights. They must first know their rights. *Hannon v. Hounihan,* 85 Va. 429, 439, 12 S. E. 157, 160. This defense is only permitted to defeat an acknowledged right on the ground that laches affords evidence that the right has been abandoned. *Valley Bank v. Fidelity Co.,* 153 Va. 484, 496, 150 S. E. 403, 406; *Gilley v. Nidermaier,* 176 Va. 32, 43, 10 S. E. 2d 484, 488; 7 Mich. Jur., Equity, § 29, p. 53.

As stated before, the uncontroverted evidence shows that the appellants were fraudulently kept in ignorance of their rights in the property until 1953. They brought this suit within a reasonable time thereafter.

■ The last contention of the appellees is that there was a fatal variance between the appellants' pleadings and proof. They say that the appellants did not allege that they had been fraudulently kept in ignorance of their rights in the property.

This contention is without merit. The commissioner's finding that the parties to the 1924 partition deeds fraudulently kept the appellants in ignorance of their rights in the property was supported by evidence introduced in defense of the appellees' claim that the appellants were guilty of laches. Hence it was not necessary that the appellants allege fraud before they could introduce evidence in answer to the appellees' allegation of laches. Moreover, the appellees alleged in their answer that the partition deeds were executed without fraud.

We hold that the appellants and the five Griles children, some of whom are the appellees herein, inherited title to the property as coparceners upon the death of Emily H. Griles, that appellants are not barred by laches; and that there is no variance between appellants' pleadings and proof. The remaining appellees, who claim title through some of the five Griles children, are tenants in common with ap-

pellants. Hence the appellants are entitled to maintain this suit for partition as coparceners and tenants in common.

We shall now direct our attention to appellants' contention that the court erred in decreeing that the interests of the appellants be sold for $15 per acre.

The commissioner's report, confirmed by the chancellor's decree, stated that in arriving at the value of the appellants' interests in the property they were not allowed any interest in the improvements because they had made no contributions toward them.

Generally, a tenant in common, joint tenant, or coparcener who places permanent improvements upon common property at his own expense is entitled to compensation in the event of partition, but before an allowance can be considered he must prove what improvements were made and show the amount by which the value of the property has been enhanced. *Shotwell* v. *Shotwell*, 202 Va. 613, 618, 619, 119 S. E. 2d 251, 255.

In the present case the appellees made no claim in their pleadings that they were entitled to an allowance for the value of the permanent improvements they made on the land, nor was there any evidence before the commissioner as to the extent and value of any improvements. The only evidence as to the value of the property was that it is worth between $60,000 and $80,000 with the improvements thereon. The commissioner's findings disregard this evidence and he arrived at the value of $15 per acre by going out of the record and relying on the tax assessments on the county land books. Thus, under the evidence here, that part of the decree holding that the appellants are entitled to receive $15 per acre for their interests in the property and that they have no interests in the improvements is clearly erroneous.

Since this cause will have to be remanded for further proceedings, the questions relating to the assessment of costs in the lower court shall be determined by that court after the cause has been fully disposed of there.

For the reasons stated, that part of the decree which holds that appellant Henry Daniel Rutledge owns a one-seventh interest and Maggie Hardy Wilmouth and Emily Hardy Lacks each own a one-fourteenth interest in the property, is affirmed. The other provisions of the decree holding that the appellants are entitled to receive $15 per acre for their interests in the land and the provisions fixing cost

are annulled and vacated, and this cause is remanded to the court below for further proceedings pursuant to the requirements of §§ 8-690 through 8-692, Code of 1950, 1957 Rep. Vol., for the partition of land.

*Affirmed in part, reversed in part, and remanded.*