Richmond

## DOROTHY M. MEREDITH

v.

## MRS. H. W. GOODWYN, JR., J. H. RANDOLPH, JR., TRUSTEE AND R. W. GUNN, JR., TRUSTEE

April 20, 1979

Record No. 771035.

Present: All the Justices.

F. Byron Parker, Sr. (Elmore and Parker, on briefs), for appellant.

William Massie Smith, Jr.; John E. McDonald, Jr. (George H. Gilliam; Robert S. Bozarth; Paxson, Smith, Boyd, Gilliam & Gouldman, P.C.; McDonald & Crump, P.C., on briefs), for appellees.

I'ANSON, C.J., delivered the opinion of the Court.

Appellant, Dorothy M. Meredith (Dorothy), filed a bill of complaint, subsequently amended, on October 8, 1975 seeking (1) to have a quitclaim deed, upon which her signature had been forged, set aside and declared void; (2) an accounting of the rents and profits from the property; and (3) a sale of the property free of any liens thereon, and her interest satisfied from the proceeds. Named as defendants were Garland T. Meredith (appellant's former husband), J. H. Randolph, Jr., and R. W. Gunn, Jr., trustees under a deed of trust executed by Garland T. Meredith, and Mrs. H. W. Goodwyn, Jr., formerly Erline H. Traylor, the current record owner of the realty in question.

Garland T. Meredith failed to file responsive pleadings, and on November 15, 1976 a default judgment was entered against him.[1] After hearing evidence *ore tenus,* the chancellor held in a letter opinion that Dorothy's signature on the 1972 quitclaim deed was a forgery but that her claim against the remaining defendants was barred by laches, and he entered his decree accordingly.

The facts are not in dispute. In June 1965, Garland and Dorothy Meredith purchased a duplex home in Henrico County for $15,000, taking title to the property as tenants by the entireties with the right of survivorship as at common law, by deed recorded on July 9, 1965. The Merediths furnished one unit of the duplex for use as their Richmond residence while simultaneously maintaining and living in another residence in Cocoa Beach, Florida. The other half of the duplex was let for rent through M. L. Hubbard, a local real estate agent.

In February 1969, while residing in Florida, the couple separated due to Garland's emotional illness as manifested by his violent and arbitrary behavior. Several months before the parties separated, Garland withdrew from the couple's joint savings account the sum of $15,900 and purchased savings bonds in his name alone. After the February separation, Garland returned to his home in Henrico County where he occupied one-half of the duplex and continued to rent the other half through real estate agent Hubbard. Dorothy withdrew the balance of $2,285 remaining in their joint savings account and moved to Marietta, Georgia.

Some time during 1970, Dorothy wrote to Hubbard informing him of the couple's separation and asking that her share of the rents received from the duplex be forwarded to her in Georgia. She never received a reply from Hubbard.

Dorothy had little contact with Garland after the separation except through telephone conversations. At first he urged her to resume cohabitation with him, which she refused to do. In May 1972, Garland telephoned Dorothy and requested that she convey her interest in the Henrico County residence to him, promising in return to leave the property to her in his will. She refused to make

---

[1]The chancellor's decree awarded Dorothy $13,875, one-half of the current value of the land and dwelling involved in this suit, and $5,670, one-half of the net rents of the property from the date of the forged deed to the date of the decree plus interest and cost. Meredith died on January 26, 1977, and his estate is not participating in this appeal.

the conveyance without a settlement for one-half of the value and rentals from the property.

Dorothy retained Richmond counsel in August 1974 to institute a suit for divorce from Garland. From her counsel, Dorothy first learned of four significant events which had occurred at the instance of her estranged husband. First, in July 1970, a year and a half after their separation, Garland had obtained a final decree of divorce from Dorothy after proceeding against her in the Henrico County Circuit Court by an order of publication. Second, Dorothy's attorney found among the deed books in the Clerk's office of the Circuit Court of Henrico County a quitclaim deed bearing date of April 12, 1972 and recorded on April 26, 1972, ostensibly signed and acknowledged by "Dorothy M. Meredith, divorced" conveying all her right, title, and interest in the Henrico County residence to Garland. Third, found entered among the land records was a deed of trust dated May 17, 1972, executed by Garland to Randolph and Gunn as trustees, to secure a loan on the property in question for $15,800. Fourth and finally, Dorothy's attorney found yet another deed, dated January 15, 1974 and recorded January 31, 1974, which conveyed the property in question to Erline H. Traylor, now Mrs. W. H. Goodwyn, Jr., subject to the deed of trust recorded in May 1972.

Dorothy's purported signature on the April 12, 1972 quitclaim deed was acknowledged by a notary who was deceased at the time this suit was heard in the court below.

The sole question cognizable on this appeal is whether the evidence is sufficient to prove the defense of laches.[2]

When a chancellor hears evidence *ore tenus*, his findings are "presumed to be correct, and his decree will not be disturbed by us unless plainly wrong or without evidence to support it." *Portewig* v. *Ryder*, 208 Va. 791, 794, 160 S.E.2d 789, 792 (1968). Thus, the question for our determination here is whether the record contains sufficient credible evidence which, upon the application of correct principles of law, supports the chancellor's findings of fact and his decree that Dorothy's claim was barred by laches. *Crounse* v. *Crounse*, 207 Va. 524, 529, 151 S.E.2d 412, 416 (1966).

" '*Laches* is such neglect or omission to do what one should

---

[2]We do not consider whether the defense of laches applies against an owner of property conveyed by a forged deed because the question was not properly raised by appellant's assignments of error. See Rule 5:21. For purposes of this opinion only, we will assume that it does.

do as warrants the presumption that he has abandoned his claim, and declines to assert his right.'" (Citation omitted.) But, "'[t]here is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another; each case is to be determined according to its own particular circumstances.'" (Citations omitted.) *Pittman* v. *Pittman*, 208 Va. 476, 479, 158 S.E.2d 746, 749 (1968).

"'It is a well recognized rule in equity that laches cannot be applied against those who are ignorant of their rights. They must first know their rights. [Citation omitted.] This defense is only permitted to defeat an acknowledged right on the ground that laches affords evidence that the right has been abandoned.'" *Pittman, supra*, 208 Va. at 480, 158 S.E.2d at 749, quoting *Rutledge* v. *Rutledge*, 204 Va. 522, 530, 132 S.E.2d 469, 475 (1963).

We said in *O'Neill* v. *Cole*, 194 Va. 50, 59, 72 S.E.2d 382, 387 (1952), quoting 30 C.J.S. *Equity* § 128(b) (now 30A C.J.S. at 84 (1965)), that "'[w]here ignorance of facts is urged as an excuse for delay, the general rules on the subject of notice, actual and constructive, come into application . . . ignorance due to negligence does not excuse laches. One must have been diligent and have made such enquiry and investigation *as the circumstances reasonably suggested and permitted*.'" (Emphasis added.)

In the present case, the chancellor found as a fact that Dorothy's purported signature on the quitclaim deed dated April 12, 1972 was a forgery.

After the parties separated in 1969, they had several telephone conversations relative to their resumption of cohabitation in Henrico County. The last telephone conversation between the Merediths was in May 1972 when Garland asked Dorothy to convey to him her interest in the duplex, which she refused to do. She did not know at that time that her signature had already been forged on a deed conveying her interest in the property, or that he had obtained a divorce from her in 1970. It was not until sometime after she contacted her Richmond lawyer in August 1974 requesting him to institute a suit for divorce, which was filed May 27, 1975, that she learned Garland had already obtained a divorce and that her signature had been forged on the deed purportedly conveying all her right, title, and interest in the property to Garland. Within a reasonable time after acquiring such knowledge, she instituted this suit.

The mere fact that Garland had drawn $15,900 out of their joint bank account in 1968 and used the money to purchase bonds in his name alone does not give rise to a reasonable conclusion that he would be a party to a criminal act in forging Dorothy's name to the 1972 deed. Nor did it reasonably suggest to or alert Dorothy that she should have the records of deeds checked periodically to determine if there had been any conveyance of her interest in the property through a forged deed. The fact that she did not pursue her claim sooner against Garland for one-half of the rents from the rented portion of the duplex does not indicate that she was negligent or that she had abandoned her interest in the property. She could have reasonably assumed that her share of the rents was being used for payment of taxes, insurance and upkeep of the property.

There is no evidence in this case showing that Dorothy knew or should have known by the exercise of reasonable diligence that her signature had been forged on the deed or establishing that she was negligent in failing to protect her interest in the property. A person cannot be guilty of laches in failing to seek relief promptly when he does not know of his rights or need for relief. Hence, we find from the facts and circumstances here that the evidence is insufficient to support the chancellor's finding that Dorothy was guilty of laches barring her interest in the subject property.

For the reasons stated, the judgment of the court below is set aside and reversed, and the case is remanded for the entry of a decree consistent with this opinion.

*Reversed and remanded.*