**WELLS FARGO BANK MINN., N.A., Plaintiff,**

v.

**LEVIN PROF'L SERVS., INC. t/a Washington Prof'l Sys., et al. Defendants.**

No. 03–CV–427.

United States District Court, E.D. Virginia, Alexandria Division.

March 11, 2004.

Nancy Elizabeth Nunan, Jacqueline Reid Fields, Joseph Leigh Fuller, Kutak Rock LLP, Washington, DC, for Plaintiff.

Zachary Booth Cotner, Falls Church, VA, for Defendants.

### MEMORANDUM OPINION

CACHERIS, District Judge.

Plaintiff Wells Fargo Bank Minnesota, N.A. ("Wells Fargo") commenced this action to recover lease payments allegedly owed to it by the Defendants. Specifically, Wells Fargo alleges that Levin Professional Services, Inc., t/a Washington Professional Systems ("Levin") has improperly garnished lease payments from Defendant Henninger Media Services, Inc. ("Henninger") owed to Wells Fargo under an equipment lease ("the Lease" or "Lease 4023"). Both Wells Fargo and Levin have moved for summary judgment.

The questions that the Court must answer are the following: (1) is Levin's garnishment of the lease proper under Virginia law; (2) if the garnishment is improper, does the Doctrine of Laches prevent Wells Fargo from receiving the lease payments; and (3) is the propriety of the garnishment res judicata or is Wells Fargo collaterally estopped from

attacking the garnishment. For the reasons stated below, the Court will grant the Wells Fargo's motion for Summary Judgment and deny the Defendant's motion for Summary Judgment.

## I. Background

### A. Transactions Between Levin, Terminal, and Henninger

Levin is an equipment vendor, incorporated with its principal place of business in Maryland. It sold electronic, multi-media equipment to Terminal Marketing Company Inc. ("Terminal"), a company in the business of leasing equipment. On June 29, 2000, Terminal leased this equipment to Henninger Media Services Inc. ("Henninger"), a company involved in multi-media production. The Lease provided that an assignee took the Lease "with[out] any obligations or liabilities" of the original Lessor and "free from all defenses, setoffs or counterclaims which [Lessee] may be entitled to assert." (Pl.Ex. A ¶ 14.)

### B. Transactions Between Terminal and Wells Fargo

On August 1, 2000, Terminal assigned this lease to Terminal Finance Corporation II ("TFC II"), a special purpose trust corporation created by Terminal. TFC II obtained the funds needed to purchase the assignment by borrowing money from and issuing promissory notes to investors ("noteholders"). As security for the noteholders, TFC II assigned the leases to Wells Fargo, who served as the indenture trustee.[1] This type of transaction is known as an asset-backed securitization. *Wells Fargo Bank Minn., N.A. v. Nassau Broad. P'ship, L.P.*, No. 01 Civ. 11255(HB), 2003 WL 22339299, at *2 (S.D.N.Y. Oct. 10, 2003). Terminal created TFC II to serve as a conduit to purchase equipment leases as security in exchange for loans from investors. *Id.*

On or about January 25, 2001, TFC II, as part of a securitization involving thousands of other leases, sold and assigned the Lease to Wells Fargo, as Indenture Trustee for the Noteholders who had provided the funds to pay for the purchase of the Lease. Terminal delivered the original Lease to Wells Fargo. Wells Fargo paid TFC II $294,098 for the Lease. TFC II, in turn, assigned all of its rights, title and interest in the Lease to Wells Fargo. In addition, on or about January 25, 2001, Wells Fargo took possession of the Lease and continues to maintain physical possession. Ultimately, on February 14, 2001, Wells Fargo terminated its relationship with Terminal as Servicer.

In an unrelated set of transactions, Terminal became indebted to Levin. On July 17, 2001, Levin obtained a default judgment against Terminal in the United States District Court for the District of Maryland. On October 18, 2001, Levin filed an Entry of Foreign Judgment in this Court.

On September 18, 2001, in an effort to satisfy its judgment against Terminal, Levin filed a garnishment action against the Asgard Entertainment Group, Inc. ("Asgard") seeking garnishment of Lease No. 4056 that were due to Terminal. By letter dated November 27, 2001 counsel for Wells Fargo wrote to Asgard, claiming that it held "all rights, title, and interest" in Lease 4056, including the right to receive payments from Asgard. (Pl. Mem. Ex. 1 ¶ 22.) Wells Fargo intervened in the Asgard garnishment. (*Id.* ¶ 26.)

---

1. An indenture trustee is "A trustee named in a trust indenture and charged with holding legal title to the trust property; a trustee under an indenture." Black's Law Dictionary (7th ed.1999).

On January 21, 2002, Henninger accepted service of a garnishment summons from this Court, stating that all payments due from Henninger to Terminal should be paid instead to Levin. On January 29, 2002, this Court ordered Henninger to make 18 monthly payments due under the Lease to Levin. Wells Fargo was not given specific notice of these proceedings relating to the garnishment.[2]

On July 15, 2002, Henninger filed for bankruptcy protection. Pursuant to the Bankruptcy plan, Henninger is continuing to make payments on the other Terminal Leases assigned to Well Fargo. Henninger, however, is making payments to Levin under this Court's Garnishment Order.

Consequently, Wells Fargo brings this suit requesting (1) a declaration that it is the owner of the Lease; (2) disgorgement of payments made to Levin under the garnishment Order; (3) return of all money paid by Henninger to Levin under the garnishment Order; and (4) that a constructive trust be imposed on the Lease payments made by Henninger to Levin.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(©). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing summary judgment may not rest upon mere allegations or denials; a "mere scintilla" of evidence is insufficient to overcome summary judgment. *Anderson,* 477 U.S. at 248–52, 106 S.Ct. 2505. A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. *See id.* at 255, 106 S.Ct. 2505. Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548 (1986). When a motion for summary judgment is made, the evidence presented must always be construed in the light most favorable to the nonmoving party. *See Smith v. Va. Commonwealth Univ.,* 84 F.3d 672, 675 (4th Cir.1996) (en banc).

## III. Analysis

The question in this case is who owns the right to the payments under Lease 4023. More specifically, the Court must decide who had the right to the Lease payments at the time of Levin's judgment and garnishment. This case involves the laws of multiple jurisdictions. First, the

**2.** Nevertheless, Levin claims that in the Asgard garnishment, it asked counsel for Wells Fargo to identify any and all leases involving Terminal in which Wells Fargo claimed an interest. But Wells Fargo never responded to this request. (*See* Def. Mem. in Supp. Ex 1 ¶ 23.)

question of garnishment is determined with reference to Virginia law. Second, the question of whether the assignment of the Lease from Terminal to Wells Fargo was effective is governed by the law of New York State.[3]

## A. Plaintiff's Motion for Summary Judgment

Wells Fargo contends that Levin's garnishment of the Lease payments is improper because Terminal, the judgment debtor, had no rights to the Lease or the Lease payments at the time of the garnishment, because all rights, title, and interest were sold and assigned for value to Wells Fargo. In other words, Levin's judgment cannot be satisfied with the payments from the Lease, because Terminal had no rights to that property.

### 1. Garnishment

■ The Court must first determine whether the Garnishment was proper. Under Virginia law, judgment creditors may satisfy their judgments by obtaining a writ of *fieri facias*.[4] *Network Solutions v. Umbro Int'l Inc.*, 259 Va. 759, 529 S.E.2d 80, 85 (2000). Virginia Code 8.01–478 provides that except for exemptions provided for in Title 34, a writ of *fieri facias* may be levied on goods and chattels and money and banknotes of a judgment debtor and "shall bind what is capable of being levied on only from the time it is actually levied by the officer to whom it has been delivered to be executed." Va.Code Ann. § 8.01–428; *In re Lamm*, 47 B.R. 364, 367 (D.C.Va.1984). The Virginia Code further

elaborates on what property may be garnished:

> Every writ of *fieri facias* shall ... be a lien from the time it is delivered ... on all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return day of such writ become, possessed or entitled, in which, from its nature is not capable of being levied on ... and except that, as against an assignee of any such estate for valuable consideration, the lien by virtue of this section shall not affect him unless he had notice thereof at the time of the assignment.

Va.Code. Ann. § 8.01–501.

■ A lien established under section 8.01–501 attaches to a debt owed by a third party to the debtor and which arises prior to the return date of the writ, even though payment on that debt will not be received by the debtor until after the return date. *In re Andrews*, 210 B.R. 719, 721 (Bkrtcy.E.D.Va.1997); *In re Lamm*, 47 B.R. at 367 ("The lien of fieri facias extends to all the personal estate of the judgment debtor ... a debt payable in the future ...."). A writ of *fieri facias*, however, creates a lien in favor of the judgment creditor only to the extent that the judgment debtor has a possessory interest in the intangible property subject to the writ. *Int'l Fidelity Ins. Co. v. Ashland Lumber Co.*, 250 Va. 507, 463 S.E.2d 664, 666–67 (1995) (citing *Lynch v. Johnson*, 196 Va. 516, 84 S.E.2d 419, 422 (1954)).

■ When the judgment debtor has no interest in the property held by the suggested garnishee, the writ does not create

---

**3.** The sale and assignment of Terminal's interest in the Lease to Wells Fargo are governed by the Law of New York, because of the choice of law clause in the Trust Indenture. (Pl.Ex. 5(D) at § 13.10.)

**4.** The writ of *fieri facias* was an early common-law means of enforcing payment on a judgment and continues in Virginia to be a writ of execution that directs a marshal or sheriff to seize and sell a defendant's property to satisfy a money judgment. *See* Black's Law Dictionary 7th Ed. P. 641.

a valid lien on that property. *Int'l Fidelity Ins. Co.*, 463 S.E.2d at 666–67. In *International Fidelity Co.*, a judgment-creditor of a defaulting contractor sought to garnish funds retained by the Virginia Department of Transportation ("VDOT") pursuant to its contract with the contractor. 463 S.E.2d at 665–66. The chancellor held that the contractor was entitled to funds held by VDOT and ordered that the funds be paid directly to the creditor. *Id.* at 666. The Supreme Court of Virginia reversed the chancellor's ruling and held that garnishment was improper, because the contractor had defaulted on the contracts with VDOT prior to the garnishment. *Id.* at 667. The Court summarized its holding: "In short, on August 29, 1994, when [the judgment creditor] attempted to establish a lien on the funds retained by VDOT, [the contractor] had no possessory interest in the funds. Accordingly, no lien was established and no garnishment of the funds could result." *Id.*

In this case, if the assignment of the Lease to Wells Fargo was proper, then Terminal did not have a possessory interest in the Lease at the time of the garnishment. Levin has stipulated that "Wells Fargo, as indenture trustee for the Noteholders, paid [TFC II] $294,098.65 for the assignment to Wells Fargo of all right, title, and interest in [the Lease]." (Pl.Ex. 1 ¶ 10.) Contradicting its stipulation of facts, Levin now challenges the validity of the assignment from TFC II to Wells Fargo. (Def. Mem. in Opp. at 2 n. 1.) The Court must, therefore, determine whether there is a genuine issue of material fact concerning the validity of the assignment. If the assignment of the Lease to Wells Fargo was valid, Levin could not satisfy its judgment from the lease payments.

*2. Assignment*

██ New York law governs the validity of the assignment, because the Indenture Agreement between Wells Fargo and TFC II contained a New York choice of law term. "An assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, or chattel, or other thing." *See Aini v. Sun Taiyang Co.*, 964 F.Supp. 762, 778 (S.D.N.Y.1997). Under New York law, contracts are freely assignable. in the absence of clear language expressly prohibiting assignment. *Oei v. Citibank, N.A.*, 957 F.Supp. 492, 522 (S.D.N.Y.1997). It is well settled that "[n]o particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." *Leon v. Martinez*, 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511, 513 (1994). In order for an assignment to be valid, the assignor must manifest his intention to be "divested of all control over the thing assigned." *Coastal Commercial Corp. v. Samuel Kosoff & Sons*, 10 A.D.2d 372, 199 N.Y.S.2d 852, 856 (4th Dep't 1960); *see Advanced Magnetics, Inc. v. Bayfront Partners, Inc.* 106 F.3d 11, 17 (2d Cir. 1997); *see also Miller v. Wells Fargo Bank Intl. Corp.*, 540 F.2d 548, 557–558 (2d Cir. 1976) ("[a]ny act or words are sufficient which show an intention of transferring the chose in action to the assignee, when the assignor is divested of all control and right to cause of action and the assignee is entitled to control it and receive its fruits." (internal quotations omitted)). In accordance with the parties' intentions, the substance and not the form prevails in determining whether a particular transaction constitutes an assignment. *Aini*, 964 F.Supp. at 778.

■ The assignment of Lease 4023 was proper. It was supported by consideration on both sides and TFC II manifested its intent to divest itself of all of its rights to the Lease. TFC II transferred over a thousand commercial equipment leases to Wells Fargo as trustee. (Mowbray Decl. ¶ 5.) The "Granting Clause" of the Indenture manifests an intent on the part of TFC II to divest itself of "all ... rights, title, and interests" in and from these leases, including Lease 4023, and to transfer those rights to Wells Fargo as trustee. (Mowbray Decl. Ex. D at 2.) In exchange for those rights, the Noteholders paid $4,724,853.26. (*Id.* ¶ 7.) The amount attributable to the Lease was $294,098.65. (*Id.*) It is undisputed that Terminal delivered the original Lease to Wells Fargo, who has maintained possession of the original since that time. (Pl. Mem. in Supp. ¶ 11.) The delivery of the Lease to Wells Fargo and the payment of $294,098.65 in consideration show that the assignment was not a sham transaction. The Court holds that there exists no genuine issue of material fact that the assignment of the lease was validly executed.

Furthermore, other courts have examined and upheld the assignment of other leases from TFC II to Wells Fargo. In *Wells Fargo Mn., N.A., v. Nassau Broadcasting,* the court addressed the validity of the same assignment as in this case: a two-step assignment from Terminal to TFC II to Wells Fargo. No. 01 Civ. 11255(HB), 2003 WL 22339299 (S.D.N.Y. Oct. 10, 2003) The Court found that "Terminal transferred over 1500 leases from 1995 through 2001, following the same steps as it regularly did on a twice-monthly basis, in which funds were transferred from the lender to Terminal via an account held by the trustee to hold as collateral for the loan." *Nassau Broad.,* 2003 WL 22339299 at *5. The court held that "sufficient evidence ha[d] been presented to show that the Nassau lease was in fact assigned to Wells Fargo as collateral for the loan provided by the noteholders." *Id.* The Court, therefore, held that the assignment was valid. *Id.*

Similarly in *Solid State Logic, Inc. v. Terminal Financing Corp.,* the court dismissed an action by a vendor against Wells Fargo and others to recover a debt owed to the vendor by Terminal for the purchase of leased equipment. No. 118736/02, Slip Op. at 8–9 (N.Y. Supreme Ct. May 8, 2003). In analyzing the assignment, the New York court found that "Terminal was cloaked with all indicia of ownership and could validly transfer good title to the leases and the related equipment." *Id.* at 7. The court held that Terminal had the ability to assign the right to collect the lease payments and that the assignment of the lease was valid. *See id.* at 7

Considering the leases in this case, the Court is unaware of any fact that differentiates the leases in *Nassau Broadcasting* and *Solid State Logic* from Lease 4023. The Defendant's attempts to distinguish these two cases are unavailing. Levin points to the presence of the "hell or highwater" clause[5] in *Nassau Broadcasting* in an attempt to distinguish the case. While the "hell or highwater" clause was relevant to the court's determination that Nassau's obligation to pay Wells Fargo, as Terminal's assignee, it was completely immaterial to the court's decision that the assignment was valid.

---

**5.** The lease in *Nassau Broadcasting* provided that the "Lessee's obligation to pay Lessor all amounts due hereunder is absolute and unconditional" and that "Lessee shall not be entitled to any abatement, reduction, set-off, counterclaim, defense or deduction with respect to any Rent or other sum payable hereunder." 2003 WL 22339299, at *1.

Levin contends that *Solid State* is distinguishable, because Solid State was not a judgment-creditor and Solid State and Terminal had an ongoing business arrangement. (Def. Opp. at 14.) Defendant, however, fails to indicate why these facts are relevant to the assignment of the lease to Wells Fargo. In another attempt to distinguish this case, Levin also points to lease in *Solid State*, which specifically provided for a right to assign. *Id.* This argument fails to dispel the similarity between the two cases, because the lease does not contain an anti-assignment clause. As stated above, under New York law, contracts are freely assignable. in the absence of clear language expressly prohibiting assignment. *Oei*, 957 F.Supp. at 522. *Solid State* is relevant to the present inquiry because it involved the same type of transaction at issue in this case. It adds support to the Plaintiff's position that the assignment of the lease was validly executed.

Levin attacks the assignment on the grounds that Wells Fargo and Terminal did not act in good faith. The court in *Nassau Broadcasting* rejected this exact argument. Judge Baer specifically found that Wells Fargo "acted in a commercially reasonable manner" and obtain the assignment in good faith. *Id.* at 9. Levin, moreover, has not offered any evidence of bad faith, but instead points to the close relationship between Wells Fargo and Terminal, asking this Court to infer collusion. Defendant argues that its rights as garnishor are superior to Wells Fargo's, because the latter is not a "bona fide purchaser for value" under § 2–403 of the UCC. In support of its argument, Defendant relies on *Monsanto Co. v. Walter E. Heller Co.*, 114 Ill.App.3d 1078, 70 Ill.Dec. 646, 449 N.E.2d 993 (1983) for the proposition that the close relationship between Wells Fargo and Terminal establishes a lack of good faith.

In *Heller*, a supplier-creditor brought an action against the buyer's lender to reclaim goods delivered in exchange for dishonored checks. 70 Ill.Dec. at 647–48, 449 N.E.2d 993. Monsanto had provided raw materials to the debtor and sought to reclaim some of these goods. *Id.* at 994. The court rejected the defendant-financing company's argument that it was a "good faith purchaser for value by virtue of its perfected security interest in the goods." *Id.* (quotations omitted). The court held that "[g]iven the course of dealing between the parties, Heller's direct involvement with the operation of [the debtor] and with [the debtor's] transactions with its suppliers, we believe that ... the trial court correctly concluded that Heller was not entitled to the priority of a 'good faith purchaser for value' under [UCC] section 2–403(1)." *Id.* at 1000.

Levin's reliance on *Heller* is misplaced. The case is distinguishable for two reasons. First, Wells Fargo is not attempting to avail itself of the protections of UCC § 2–403. Article 2 of the UCC applies only to goods and has no application to this case. *See* UCC § 2–105 (defining goods as "things ... which are moveable"). In *Heller*, the dispute revolved around the raw materials Monsanto had sold to the debtor. *Heller*, 70 Ill.Dec. 646, 449 N.E.2d at 994. This case, however, involves the right to receive payments under the Lease. This case involves the assignment of a lease, which is chattel paper. *See* UCC § 9–102(11)("chattel paper ... means a lease of specific goods."). Therefore, UCC § 2–403 is not applicable.

The second reason that *Heller* is inapposite is that there is no evidence of Wells Fargo's "direct involvement" with Termi-

nal or TFC II's operations.[6] The Court finds that Wells Fargo's role involvement with Terminal and TFC II was limited to the duties and obligations outlined in the Indenture. (*See* Mowbray Decl. at 11 ("Wells Fargo's only involvement in or relationship to Terminal or TFC II in regard to either the leases or the amounts paid for the leases are as stated in the Indenture and related documents. Specifically, Wells Fargo did not direct or control how Terminal spent any monies it received, or which vendors or other creditors Terminal paid with its own money, nor did Terminal consult with Wells Fargo about such matters.")) As stated by the court in *Nassau Broadcasting*, "Wells Fargo's duties were largely administrative, such as to handle the money on behalf of the parties involved in the assignment transaction and to hold the documents for the leases in trust in its vault." 2003 WL 22339299, at *2.[7] Moreover, unlike in *Heller*, no relationship existed between Levin and Wells Fargo. *See In re FCX, Inc.*, 62 B.R. 315, 321 (Bkrtcy.E.D.N.C.1986)(rejecting an application of *Heller* where "[t]here is no evidence here that CBC had any relationship with the reclaiming sellers, and there is no suggestion that CBC's decision to make further advances breached any understanding between CBC and the plaintiffs"). Moreover, Wells Fargo, at the time of the assignment, was unaware that Terminal owed money to Levin.

The Court holds that Levin's garnishment of the payments under Lease 4023 was improper, because at the time of the garnishment Terminal did not own the right to receive the lease payments. Accordingly, the Court will enter summary judgment in favor of the Plaintiff.

## C. Defendant's Motion For Summary Judgment

### 1. Laches

The Defendant argues that Wells Fargo has slept on its rights, and, therefore, Levin is entitled to summary judgment in its favor on the ground of Laches.

The affirmative defense of Laches is defined as "an omission to assert a right for an unreasonable time and unexplained length of time, under circumstances prejudicial to the adverse party." *Finkel Outdoor Prods., Inc. v. Bell*, 205 Va. 927, 140 S.E.2d 695, 699 (1965). In order to prevail on laches, Levin must show two things: (1) Wells Fargo's neglect or failure to assert a known right or claim for an unexplained period of time, and (2) that the delay has prejudiced Levin. *See Michigan Mut. Ins. Co. v. Smoot*, 183 F.Supp.2d 806, 812 (E.D.Va.2001); *see also Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust*, 243 Va. 53, 413 S.E.2d

---

6. In *Heller*, the debtor's customers remitted all funds directly to Heller through a lockbox at its bank. 70 Ill.Dec. 646, 449 N.E.2d at 995. Heller's executives had daily telephone conversations with the debtor concerning the following: (1) the debtor's sales of the prior day, the amount collected in Heller's lockbox; (2) the prior day's balances in the debtor's accounts; (3) the amount of checks previously written by the debtor that had not yet cleared; (4) the amount of cash required to cover checks previously written that were to clear that day; (5) general business information concerning the debtor and Monsanto. *Id.* The defendant monitored its loans by auditing Ilikon's books and records and examining its assets and facilities from time to time. *Id.* Heller also required regular written financial reports from the debtor, including the following detailed accounting information: daily reports of bank balances; sales collections and accounts receivable; raw materials received; and monthly inventory reports. *Id.*

7. Plaintiff argues that it is a secured creditor in this case, but given the fact that the garnishment was improper, the Court need not make such a holding.

599, 602 (1992); *Marshall v. Meadows,* 921 F.Supp. 1490, 1493 (E.D.Va.1996).

■■■■ Where a party pleads ignorance of facts as an excuse for their delay, "the general rules on the subject of notice, actual and constructive, come into application ... ignorance due to negligence does not excuse laches. One must have been diligent and have made such inquiry and investigation as the circumstances reasonably suggested and permitted." *Meredith v. Goodwyn,* 219 Va. 1025, 254 S.E.2d 74, 77 (1979). Mere lapse of time, however, absent "circumstances affording evidence of a presumption that the right has been abandoned, does not constitute laches." *Riordan v. Hale,* 215 Va. 638, 212 S.E.2d 65 (1975); *see also Smoot,* 183 F.Supp.2d at 812.

Levin claims that Wells Fargo failed to assert its rights for an unreasonable length of time to the payments under Lease 4023. Defendant claims that "[a]s early as November 2001, before service of the summons in the Henninger Garnishment, Wells Fargo ... was aware of the judgment obtained by Levin against Terminal and Levin's attempts to attach lease payments due Terminal by its lessees." (Def. Mem. in Supp. at 12.) As of November 27, 2001, Wells Fargo certainly knew of Levin's attempts to obtain lease payments due Terminal: "We understand that Levin Professional Services, the seller of some equipment under the Lease ... may be claiming to have some rights to the lease payments." (*See* Tompkins Decl. Ex. C at 2.) The "Lease" referenced in Wells Fargo's letter of November 27, 2001, was lease No. 4056, between Asgard Entertain-

ment, Inc. and Terminal. (*Id.* at 1.) Wells Fargo intervened in the garnishment actions initiated by Levin to obtain the payments to Lease 4056. (Tompkins Decl. ¶ 12.)

■■■ The delay claimed by Levin is insufficient to establish the affirmative defense of Laches as a matter of law. The Court finds that Wells Fargo has been vigilant in seeking restoration of its payments under Lease 4023. Even assuming that Wells Fargo did have notice in November of 2001,[8] Levin cannot show that Wells Fargo abandoned its claim to the lease payments. Henninger stopped making lease payments to Wells Fargo in January 2002. From February 2002 through July 2002, Wells Fargo, through its subservicer, continued to service the Lease and engage in communication with Henninger concerning the Lease, Lease payments, and the Garnishment. (*See* Undisputed Facts ¶¶ 37–40.) In July 2002, Henninger filed for bankruptcy, and thereafter, Wells Fargo pursued its claims in the bankruptcy proceedings. (*See* Proof of Claim for Lease 4023.) Finally, on April 1, 2003 Wells Fargo obtained an order from the bankruptcy court to pursue this litigation. Wells Fargo filed this action on April 7, 2003. Given this series of events, Levin cannot show any period of inexcusable delay on the part of Wells Fargo that would establish the defense of laches.

Moreover, Levin is unable to prove any prejudice related to the delay. Levin claims the following in support of its claim that it has been prejudiced by Wells Fargo's delay: (1) the assets of Terminal have

---

8. The Court finds, however, that Levin's attempts to garnish Lease 4056 to be insufficient to put Wells Fargo on notice that it should have established its claim to Lease 4023 (Asgard). The Court finds that Wells Fargo knew or should have known of a poten-

tial problem with Lease 4023 when Henninger stopped making lease payments in January of 2002. The fact that Levin was attempting to obtain lease payments from other leases does constitute constructive notice to Wells Fargo for Lease 4023.

become harder to locate; (2) evidence has been lost through passage of time; (3) witnesses have become unavailable; (4) Levin has already used the garnishment payments in the ordinary course of business; (5) Henninger has filed for bankruptcy; and (6) the cost of defending this action. (Def. Reply Mem. at 12.)

Wells Fargo's delay in pursuing this action has not impacted Levin's ability to defend this action. Laches does not apply "[w]here the way is still open to a full and fair ascertainment of all the facts in spite of a lapse of time ...." *Smoot*, 183 F.Supp.2d at 812 (E.D.Va.2001); *see EEOC v. American Nat. Bank*, 652 F.2d 1176, 1181 (4th Cir.1981) ("Any prejudice to the Bank resulting from the loss of evidence relating to [the] charge did not affect its ability to defend the pattern or practice suit.") Levin has not offered any evidence of its inability to defend against Wells Fargo's claims that is due to the delay. Levin has not indicated any evidence or witness that is unavailable due to the passage of time.

Levin's other claims of prejudice do not constitute a reason to allow it to keep funds that it, otherwise, would not be entitled to. Levin's claim that it has used the money in the ordinary course of business is insufficient to show prejudice. Furthermore, any prejudice to Levin resulting from Henninger's bankruptcy cannot be attributed to Wells Fargo's delay. In order to establish laches, a party's delay must cause the prejudice. *See Smoot*, 183 F.Supp.2d at 812. Wells Fargo's delay has not caused the Henninger bankruptcy. Accordingly, the Court holds that Levin has failed to show that it has been prejudiced by any delay attributable to Wells Fargo.

**D. Res Judicata & Collateral Estoppel**

Levin's final affirmative defense and ground for summary judgment is that Wells Fargo is barred from recovering on the grounds of res judicata. The basis of this claim is the allegation that "Wells Fargo's privies were parties to the Henninger Garnishment." (Def. Mem. in Supp. at 18.) The only parties to the Henninger garnishment action were Levin, Henninger, and nominally Terminal. Wells Fargo was not a party to the proceedings. (Undisp.Facts.¶¶ 36–37.)

There is no fixed definition of privity that automatically can be applied to all cases involving res judicata issues. *Nero v. Ferris*, 222 Va. 807, 284 S.E.2d 828, 831 (1981). While privity generally involves a party so identical in interest with another that he represents the same legal right, a determination of just who are privies requires a careful examination into the circumstances of each case. *Id.; Storm v. Nationwide Mut. Ins. Co.*, 199 Va. 130, 134–35, 97 S.E.2d 759, 762 (1957).

■ In examining the Henninger garnishment, the Court cannot conclude that any of the parties had the identical interests as Wells Fargo. Levin's interests were and continue to be completely adverse to Wells Fargo's. Henninger took a position adverse to Wells Fargo in the proceedings. Moreover, Henninger had interests adverse to Wells Fargo, because it was indebted to Wells Fargo. Terminal did not take an active role in the proceedings. As the judgment creditor, Levin was acting on behalf of Terminal. *See Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 529 S.E.2d 80, 84 (2000) ("A proceeding in garnishment is substantially an action at law by the judgment debtor in the name of the judgment creditor against the garnishee ....") Accordingly, Terminal's interests were also adverse to Wells Fargo's.

As Levin has offered no evidence of privity between Wells Fargo and any par-

ticipant in the Henninger garnishment, Wells Fargo is not bound by the court's decision. Levin's defense of res judicata must fail as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Plaintiff's motion for summary judgment and will deny the Defendant's motion for summary judgment. The Court will grant Wells Fargo: (1) a declaration that it is the owner of the Lease; (2) the disgorgement of payments made to Levin under the garnishment Order; and (3) the return of all money paid by Henninger to Levin under the garnishment Order; and (4) will impose a constructive trust on the Lease payments made by Henninger to Levin.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Plaintiff's Motion for Summary Judgment is GRANTED;

(2) The Court declares that Wells Fargo is the owner of Lease 4023 and is entitled to the lease payments;

(3) Defendant Levin Prof'l Servs. Inc. is ordered to disgorge the payments made to Levin under the garnishment Order and return of all money paid by Henninger to Levin under the garnishment Order;

(4) The Court imposes a constructive trust on the Lease payments made by Henninger to Levin.

(5) Defendant Levin's Motion for Summary Judgment is DENIED;

(6) the Clerk of the Court shall forward copies of this Order to all counsel of record.