COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Athey and Causey
Argued at Alexandria, Virginia

**PUBLISHED**

PUI HO

OPINION BY
v.      Record No. 1585-22-4          JUDGE GLEN A. HUFF
FEBRUARY 6, 2024

EBNE RAHMAN, ET AL.

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Lon E. Farris, Judge Designate[1]

Stephen Domenic Scavuzzo for appellant.

J. Chapman Petersen (Ibnul Ali Khan; Chap Petersen & Associates,
PLC, on brief), for appellee Ebne Rahman.

(Lisa M. Ernest; Fidelity National Law Group, on brief), for appellee
Truist Bank.

Pui Ho ("appellant") appeals the Prince William County Circuit Court's (the "circuit court")
order sustaining Ebne Rahman's ("appellee") plea in bar that the 15-year statute of limitations
period for adverse possession ("possessory period") could not run against him because he had not
owned the property for 15 years.  Appellant contends that the possessory period runs against the
property, not the owner, and therefore the intervening sale to appellee is of no consequence to her
adverse possession claim.  For the following reasons, this Court finds, as a matter of law, that the
intervening sale to appellee did not affect the possessory period.  Accordingly, the circuit court's
order sustaining the plea in bar is reversed and this matter is remanded for further proceedings.

---

[1] Judge Farris is a retired judge of the Prince William Circuit Court.

BACKGROUND[2]

In June 2005, appellant purchased her home on Linton Hall Road in Bristow, Virginia. At the time of her purchase the survey plat map showed "[a] solid black line depict[ing] the property boundary as noted in the land records" on the west side of appellant's property and "a thinner line with perpendicular 'dashes' at regular intervals [depicting a] 'wire fence'" to the west and outside of appellant's boundary line. This wire fence separated appellant's property from the undeveloped lots to the west and had been installed by a prior owner at some point in the 1970s. Additionally, numerous trees grew to the east of the wire fence.[3] Appellant contends these trees and the wire fence "form a clearly visible and open boundary between [her] property and the lots on the west side."[4] After appellant purchased her property, multiple single-family homes were constructed to the west, including appellee's home.

Appellee purchased his home in 2010. He purportedly knew the wire fence was on his property but made no entry onto the part of his property east of the wire fence until March 2021 when he tore it down and removed the nearby trees. Appellee's actions constitute the first time an owner of appellee's lot disturbed the fence since its construction.

---

[2] "[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)).

[3] It is unclear if these trees were on appellant's property or between the wire fence and her property line.

[4] A wood privacy fence was installed during construction on the lots to appellant's west. It stood west of the wire fence, and appellant concedes it did not disturb the property line purportedly established by the wire fence. The record does not reflect if, or when, this wood fence was removed; seemingly it was included in the second amended complaint to establish appellant's claim that her property line extends to the wire fence.

In September 2021, appellant brought this action to quiet title for the land between the surveyed property line and the wire fence. She asserted that she had acquired the land by adverse possession, or, in the alternative, that her use of it had established a prescriptive easement by which she should be allowed to continue using the disputed land in the same manner she had been since acquiring her property in 2005. Appellee demurred, arguing a bill to quiet title was not the appropriate legal mechanism to litigate this matter because the property line, not the property title, was in dispute. Appellee also argued a prescriptive easement was an inappropriate legal mechanism because easements provide land use rights, not ownership, and appellant had not identified a specific or required use by her on which a prescriptive easement could be granted. The circuit court sustained the demurrer with leave to amend.

Appellant's amended complaint sought determination of her boundary line, award of the disputed land acquired by adverse possession, and monetary damages. Appellee again demurred, arguing that appellant's suit was not the proper legal mechanism for the relief she sought and that the amended complaint was insufficient.[5] The circuit court denied appellee's requests and ordered him to answer the first amended complaint. Appellee filed an answer and moved to join necessary parties.[6]

Appellant subsequently filed a second amended complaint joining the necessary parties. Finally, appellee filed a plea in bar, arguing that the possessory period could not have started until he took ownership of the disputed property, less than 15 years prior. In opposition,

---

[5] Appellee's demurrer was amended with leave of the circuit court to include the sufficiency challenge.

[6] The necessary parties are Mortgage Electronic Registration Systems, Inc. ("MERS"), the holder of legal title to appellee's property and beneficiary of the deed of trust, Truist Bank, the assignee of appellee's mortgage loan secured by the deed of trust, and Deanna Follin, the named trustee of the deed of trust.

appellant argued she had been in exclusive possession of the disputed land for the possessory period and that the length of time appellee personally owned the land is irrelevant to her claim on the property itself. Following full briefing from both parties, the circuit court sustained the plea in bar. Appellant objected to the circuit court's ruling and endorsed the order dismissing her case as "Seen and Objection."

This appeal followed.

ANALYSIS

I. This appeal is not procedurally defaulted.

Appellee urges this Court to dismiss the appeal and affirm the circuit court's ruling on the basis that appellant failed to properly preserve her assignment of error.[7] He contends that appellant's "Seen and Objection" endorsement on the final court order is insufficient under Rule 5A:18 to preserve her argument on appeal because it was neither timely nor specific. Under the circumstances here, this Court declines to adopt appellee's position.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. To preserve an issue for appeal, the objecting party must state the objection and its grounds with specificity. *Lee v. Lee*, 12 Va. App. 512, 515 (1991) (en banc). This specificity requirement allows "the trial judge [to] know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

---

[7] Both appellee Rahman and appellee Truist Bank filed appellee's briefs in this appeal, generally making the same argument. As Rahman is the lead appellee, references throughout to "appellee" should be understood to refer to all appellees.

"Ordinarily, endorsement of an order 'Seen and objected to' is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error." *Herring v. Herring*, 33 Va. App. 281, 286 (2000) (citing *Lee*, 12 Va. App. at 515). "Seen and objected to" can be sufficient, however, if "the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection." *Mackie v. Hill*, 16 Va. App. 229, 231 (1993). Conversely, if a trial court's final order "encompasse[s] a broad range of subjects, and each . . . objection[ ] contains distinct issues" the *Mackie* exception does not apply. *Courembis v. Courembis*, 43 Va. App. 18, 28 (2004); *see also Herring*, 33 Va. App. at 287 ("The trial court's final order is not limited to a single finding or conclusion and, therefore, *Mackie* does not apply.").

Here, the circuit court's final order sustained the plea in bar on appellee's statute of limitations defense, thereby dismissing appellant's second amended complaint with prejudice. The single issue raised in the plea in bar was whether, despite possession of the disputed land against the prior owner, appellant's claim of adverse possession against appellee was barred, as a matter of law, because appellee had not owned the disputed property for 15 years. Both parties briefed this possessory period question for the circuit court's consideration.

Based on that narrow issue, the circuit court sustained the plea in bar by final order and did not write separately to explain its rationale.[8] Appellant endorsed the final order as "Seen and Objection." Ordinarily such notation on its own would not preserve an objection for this Court to review on appeal. Nevertheless, appellant's objection here is sufficient under *Mackie* because

---

[8] This Court recognizes that "trial courts need not state factual findings or legal conclusions unless required by statute." *Smith v. Commonwealth*, 78 Va. App. 371, 390 n.6 (2023). The acknowledgment that the circuit court did not explain itself here, and simply entered an order following complete briefing, supports the conclusion that it was fully aware of both parties' positions on the statute of limitations claim.

the circuit court's ruling was limited to a single, narrow legal question—whether appellee's purchase of property containing the disputed land disrupted the possessory period—and the circuit court was fully aware of appellant's position on that narrow issue. Therefore, appellant's "Seen and Objection" notation to the final order properly preserved this issue for appellate review.

## II. Sale of invaded land does not restart adverse possessor's 15-year clock.

Turning to the merits of this appeal, appellant contends that the period of time necessary to acquire an interest in property by adverse possession begins to run when the property interest is sufficiently invaded and continues to run regardless of any intervening sale by the rightful owner to someone else. Appellee responds that such a sale restarts the possessory period to allow the new owner the full period of time to defend his invaded interest. As this appeal presents a pure question of law, this Court reviews the circuit court's decision de novo. *See Quatannens v. Tyrrell*, 268 Va. 360, 365 (2004). "All presumptions, however, favor the holder of the legal title owner." *Calhoun v. Woods*, 246 Va. 41, 44 (1993) (citing *Matthews v. W.T. Freeman Co., Inc.*, 191 Va. 385, 395 (1950)). Because this appeal presents a novel question under Virginia law, this Court begins its analysis by addressing relevant principles of property law.

### A. Background principles of Virginia property law

Property "[a]s a legal concept, [encompasses] a body of rights." *Commonwealth, Marine Res. Comm'n v. Forbes*, 214 Va. 109, 113 (1973). This body of rights is sometimes referred to as a "bundle of sticks" with each right constituting an individual stick in the bundle. *United States v. Craft*, 535 U.S. 274, 278 (2002); *Cygnus Newport-Phase 1B, LLC v. City of Portsmouth*, 292 Va. 573, 586 (2016). Common sticks in this bundle, for example, include the right to use, the right to develop, and the right to exclude others. *See Forbes*, 214 Va. at 113 (recognizing the right to use land); *Bentley Funding Grp., L.L.C. v. SK & R Grp., L.L.C.*, 269 Va.

- 6 -

315, 331 (2005) ("Development rights are property rights."); *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 581 (2017) ("[Appellant] correctly notes that '[t]he right to exclude others is generally "one of the most essential sticks in the bundle of rights . . . ."'" (second alteration in original) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984))).

Under this framework, ownership interests may be split among various owners and conveyed independently of each other. *See Bostic v. Bostic*, 199 Va. 348, 351 (1957) (recognizing that property interests in mineral or timber rights can be conveyed separately from the rest of the property rights); *see also Wilson Bros. v. Branham*, 131 Va. 364, 373-74 (1921) ("The right of an owner to carve out of his property as many estates, or interests (perpendicular or horizontal, perpetual or limited), as it may be able to sustain, cannot be open to doubt."). Such independent conveyances can be limited to a particular use or to divide interests over time. *Johnson v. City of Suffolk*, 299 Va. 364, 373 (2020) (noting that a lease conveys the present right to use property but does not convey ownership to the property); *Richmond v. Hall*, 251 Va. 151, 158-59 (1996) (discussing the different possessory interests between a life tenant and a remainderman).

B. General overview of adverse possession

Adverse possession requires "a claimant [to] prove actual, hostile, exclusive, visible, and continuous possession [of real property], under a claim of right, for the statutory period." *Quatannens*, 268 Va. at 368 (quoting *Grappo v. Blanks*, 241 Va. 58, 61 (1991)). The statutory period to claim property by adverse possession is 15 years. *See* Code § 8.01-236. The doctrine of adverse possession is

> predicated upon the statutes of limitations . . . which, in effect, provide that an uninterrupted occupancy of lands by a person who has in fact no title thereto, for a certain number of years, shall operate to extinguish the title of the true owner thereto, and vest a right to the premises absolutely in the occupier.

*Ferguson v. Stokes*, 287 Va. 446, 451 (2014) (quoting *McClanahan's Adm'r v. Norfolk & W. Ry. Co.*, 122 Va. 705, 714-15 (1918)). The effect of adverse occupancy is the "vesting in an adverse occupant . . . a new, independent and indefeasible title—one paramount to and good against that of all other persons . . . ." *Id.* (quoting *McClanahan's Adm'r*, 122 Va. at 715); *see also McClanahan's Adm'r*, 122 Va. at 738 ("a title acquired by adverse possession is a perfect title, and good against all the world"). This language suggests that adverse possession primarily focuses on the possessor's occupation of the invaded interest and the nature of such occupation, rather than on the rights of the owner whose interest have been invaded.

C. The 15-year clock for adverse possession

"The object of [statutes of limitations] is to quiet titles to land." *Ferguson*, 287 Va. at 451 (alteration in original) (quoting *McClanahan's Adm'r*, 122 Va. at 715). Because adverse possession requires the occupancy of an interest for a defined period before a prior owner's title may be extinguished and vested as new title in the adverse possessor, the possessory period is paramount to determining when title transfers by adverse possession. Ordinarily

> [s]tatutes of limitations governing actions for land adversely possessed will not begin to run until claimant takes possession in fact under color of title or claim of right where such requirements prevail, and a cause of action therefor accrues. In other words, *limitations will not commence to run against the owner until he is in such a position that he can protect his title by appropriate proceedings*, that is, he must have a right which can be invaded with the necessity cast upon him to protect it, and when this necessity arises the statute will commence to run.

*Marion Inv. Co. v. Va. Lincoln Furniture Corp.*, 171 Va. 170, 178 (1938) (emphasis added) (quoting 2 C.J.S. *Adverse Possession* § 162 (now § 205)); *see also McClanahan's Adm'r*, 122 Va. at 739 ("Adverse possession to constitute title must be such an invasion of the rights of another as will give that other a cause of action"); *Matthews*, 191 Va. at 398. In effect the

- 8 -

possessory period will not begin to run against an interest owner until the interest owner has the right to eject the adverse possessor.

Several cases from the Supreme Court illustrate how this "right to eject" standard, by the person with a present possessory interest in the invaded land, delays commencement of the possessory period. For instance, "[adverse] possession of a life tenant['s interest], or one acquiring his interest, is not adverse to the remainderman during the term of the life estate." *Rutledge v. Rutledge*, 204 Va. 522, 528 (1963) (citing *Fitzgerald v. Fitzgerald*, 194 Va. 925, 929 (1953)). Similarly, a co-tenant cannot adversely possess against another co-tenant "unless notice, actual or constructive, is given to the other co-tenant of the intent to oust, thus making the occupying co-tenant's possession hostile." *Harkleroad v. Linkous*, 281 Va. 12, 18 (2011).

Further, "where there has been a severance of the title between the surface and the underlying minerals, no length of adverse possession of the surface will bar the right of the owner of the minerals." *McClanahan's Adm'r*, 122 Va. at 739; *see also Smith v. Pittston Co.*, 203 Va. 408 (1962). Finally, "where land is conveyed subject to building restrictions, no length of adverse possession by the occupant who does not violate the restrictions can abrogate the restrictions." *McClanahan's Adm'r*, 122 Va. at 739. In each of these examples, the possessory period was interrupted "not because of the absence of any one who can sue, but because the rights of the other party have not been invaded." *Id.*

Moreover, the possessory period will not begin to run until the interest has been sufficiently invaded and possessed to satisfy all the elements of adverse possession. "A mere naked possession without claim of right, that is the intention to use the land as his own to the exclusion of all others, can never ripen into a good title." *Radford Veneer Corp. v. Jones*, 143 Va. 124, 128 (1925). Similarly, a mere claim to improvements on the property is equally insufficient to invade the owner's rights in the real property. *See Sims v. Capper*, 133 Va. 278,

287 (1922). Commercial use of an interest without claim of ownership is also insufficient to invade the ownership rights. *See Craig-Giles Iron Co. v. Wickline*, 126 Va. 223, 236 (1919) ("a mere claim to possession, accompanied by the occasional cutting of timber, the prevention of trespasses, the payment of taxes, and the assertion of title, is not sufficient"). Finally, "[t]o establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, *for the statutory period of 15 years*." *Grappo*, 241 Va. at 61 (emphasis added).

With these principles taken together it is clear that the adverse possession statute of limitations begins to run when the present possessory interest is *sufficiently* and continuously invaded, thus allowing its owner to defend the interest.

D. Effect of a sale on the statute of limitations' commencement

With these background principles in place, this Court now considers the novel question of what effect, if any, the sale of sufficiently invaded property has on the possessory period. As discussed above, adverse possession focuses on the invasion of the interest itself, as hostile to someone else's present possessory interests, *not* on a trespasser's possession against any specific owner of the land. *Ferguson*, 287 Va. at 451 (citing *McClanahan's Adm'r*, 122 Va. at 714-15). And the possessory period begins to run only once the land has been sufficiently invaded—i.e., meets all the elements of adverse possession—and the person with a present possessory interest in the land, most commonly the interest's owner, is able to defend his rights in the interest. *Jones*, 143 Va. at 128; *Matthews*, 191 Va. at 398. Based on those principles, this Court finds that the mere sale of property during the 15-year period of adverse possession does not disrupt the running of the statute of limitations because the land remains sufficiently invaded by the possessor and the invaded ownership interest continuously has a person (or succession of persons) properly situated to defend it for the entire possessory period—first the seller as the

previous owner and then the buyer as the new owner who steps into the shoes of the transferor, his successor in interest.

Compare this situation to adverse possession against a life tenant and remainderman. When the adverse possessor sufficiently invades the life tenant's property interest, the possessory period begins to run because there exists both an invasion of the right and someone properly situated to defend that right. But because the adverse possessor cannot acquire more rights than the life tenant can defend, the possessory period *does not* run against the not-yet-vested interests of any future interest holders. Consequently, the death of the life tenant extinguishes the interest that the adverse possessor had invaded. The 15-year possessory period is thus reset and will not restart unless, and until, the adverse possessor invades the interests now presently possessed by the former future interest holders. *See*, *e.g.*, *Rutledge*, 204 Va. 522.

Likewise, when an adverse possessor sufficiently invades an interest only on the surface of the property, whoever holds the surface right is exclusively empowered to bring an action to eject the possessor. The owner of any mineral or other subsurface rights cannot bring suit against this surface invader because no subsurface rights have been invaded. Accordingly, the possessory period will not begin to run against any subsurface interests unless, and until, the adverse possessor sufficiently invades these below-the-surface rights, thus triggering the subsurface right's owner's ability to oust the invader.

It follows, therefore, that when ownership of an invaded property interest is transferred via sale, the currently running possessory period does not restart because someone has continuously been in the position to defend the property right and eject the possessor. Simply put, the buyer, as successor in interest, steps into the seller's shoes and takes the invaded interest as is with all its defects. So long as there is someone properly situated to defend the invaded

- 11 -

interest—the sole subject of the adverse possession—the statute of limitations will not restart merely because the person entitled and empowered to defend the same interest has changed.[9]

    E. The circuit court erred in finding that appellee's intervening purchase of the disputed property barred appellant's adverse possession claim.

In this matter, the circuit court sustained appellee's plea in bar that the 15-year statute of limitations for appellant's adverse possession claim could not have run against him because he owned the disputed property for fewer than 15 years. As a matter of law, that broad assertion is incorrect. The statute of limitations began to run if and when appellant sufficiently invaded the property rights of whomever owned the land between appellant's property line and the wire fence to the west. When appellee purchased his property in 2010, he acquired the same property interests as the previous owner, including an already purportedly invaded interest. While ownership of that property interest may have shifted to appellee, the interest itself remained both unchanged and invaded insofar as already done.

Further, and most importantly, the invaded interest always had an owner situated to defend it. Therefore, as a matter of law, appellee's 2010 purchase of the disputed property did not restart appellant's possessory period. Nevertheless, appellant bears the burden on remand of proving, by clear and convincing evidence, when her invasion of the disputed land began and

---

[9] This conclusion is consistent with the doctrine of "tacking." Tacking allows successive adverse possessors in privity with each other to combine their possessory periods to total the necessary time to extinguish a true owner's title. *Hollingsworth v. Sherman*, 81 Va. 668, 674 (1885) ("It is, indeed, a principle well established that where several persons enter on land in succession, the several possessions cannot be tacked, so as to make a continuity of possession, unless there is a privity of estate, or the several estates are connected."). Here, too, a sale does not break the continuity of the period necessary for adverse possession to ripen into title. The doctrine recognized herein is, in effect, the mirror-image of the doctrine of tacking.

whether it originated under a claim of right and was actual, hostile, exclusive, visible, and continuous for 15 years so as to ripen into good title.[10]

F. Appellee is not entitled to bona fide purchaser for value protections.

Notwithstanding the foregoing principles of property law, appellee argues that because he acquired the disputed property as a bona fide purchaser for value ("BFP") without notice of appellant's potential adverse possession claim his ownership interest is protected and the possessory period should have restarted because of his purchase.

"[A] purchaser for value without notice, actual or constructive, having obtained a conveyance, will not be affected by a latent equity, whether by lien or incumbrance or trust or fraud or any other claim." *Rorer Iron Co. v. Trout*, 83 Va. 397, 414 (1887); *see also Snyder v. Grandstaff*, 96 Va. 473, 477 (1898) ("A purchaser for value and without notice is not affected by any latent equity."). "

> [A] purchaser of land "is bound, not only by *actual*, but also by
> *constructive* notice, which is the same in effect as actual notice"
> and that "he has no right to shut his eyes or his ears to the inlet of
> information, and then say he is a *bona fide* purchaser without
> notice."

*Richmond v. Hall*, 251 Va. 151, 157 (1996) (quoting *Burwell v. Fauber*, 62 Va. (21 Gratt.) 446, 463 (1871)). Defects in a property's chain of title place the purchaser on constructive notice of such defect. *Shaheen v. Cnty. of Mathews*, 265 Va. 462, 477 (2003) ("[A] *bona fide* purchaser is charged with constructive notice of only those matters of record in the purchaser's chain of title referred to or about which the purchaser is placed on inquiry."). Indeed, Virginia employs a

---

[10] *See, e.g., Quatannens*, 268 Va. at 371 (holding that in Virginia "adverse possession requires proof, by clear and convincing evidence").

recording statute to supply this constructive notice to would be purchasers.[11] *Id*. ("The main purpose of recordation statutes is to give constructive notice to purchasers and encumbrancers who acquire or seek to acquire some interest or right in property." (quoting *Chavis v. Gibbs*, 198 Va. 379, 381 (1956))). In sum, a BFP is on notice for all defects in a property's chain of title of which it has actual or constructive knowledge, and any defects in the recorded chain of title are imputed to the purchaser as constructive knowledge.

Because BFP protections insulate a BFP from unknown defects in the chain of title they necessarily do not protect against adverse possession claims. Until the possessory period is complete, there is no competing title or other conveyance for a BFP to notice regardless of their diligence because title by adverse possession ripens *outside* the chain of title. Further, a fully ripened adverse possession claim does not transfer the interest owner's title to the possessor; rather it "*extinguish[es]* the title of the true owner" and vests the possessor with "a *new, independent and indefeasible title*—one paramount to and good against that of all other persons." *Ferguson*, 287 Va. at 451 (emphases added) (quoting *McClanahan's Adm'r*, 122 Va. at 715). Because no record exists for a BFP to notice, nor is there a competing claim to title before completion of 15-years of adverse possession, and because the BFP's title entirely ceases to exist upon a perfected claim of adverse possession, the BFP protections do not protect from an adverse possession claim and do not impact the running of the possessory period.

CONCLUSION

Not every instance of land possession has the potential to ripen into a claim of ownership, even if that possession has persisted for 15 or more years. More than mere possession is

---

[11] To be placed on constructive notice "[a]n intending purchaser was not required to do more than to examine the public records in order to ascertain the state of the recorded title, and when he found this complete he could purchase with safety." *Ransom v. Watson's Adm'r*, 145 Va. 669, 676 (1926).

required.  In the case at bar, appellant's possession of the disputed property may have continued notwithstanding the sale to appellee, but that, by itself, does not effectuate a change in ownership.  Rather, ownership through adverse possession requires clear and convincing evidence that such possession is adverse, hostile, actual, notorious, exclusive, continuous, and originating under a claim of right.  Absent such proof, a claim of adverse possession fails, regardless of how long the current owner of the disputed property has owned such land.

Because the circuit court erroneously dismissed this case on appellee's statute of limitations plea, it did not reach the merits of appellant's adverse possession claim.  Much remains to be proven in a trial court, and this Court refrains from comment on any such proof or the likelihood that appellant will prevail on the merits of her claim.  That being said, this Court reverses the circuit court's ruling and orders the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*